Argued and submitted November 10, affirmed December 22, 1980

## STATE OF OREGON,
### *Respondent,*
*v.*
## DAVID DOUGLAS DINKEL,
### *Appellant.*

(No. 77-4375, CA 17952)

621 P2d 626

John Daugirda, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James M. Brown, Attorney General, John R. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

Defendant was indicted for five counts of kidnapping in the first degree (ORS 163.235) and one count each of robbery in the first degree (ORS 164.415), burglary in the first degree (ORS l64.225), and unauthorized use of a motor vehicle (ORS 164.135). The jury found him guilty on all eight counts. The trial judge sentenced the defendant to five concurrent 20 year terms on the kidnapping charges and 20 years to run consecutively on the robbery charge, for a total of 40 years.[1] The charges of burglary and unauthorized use of a motor vehicle were merged with the kidnapping and robbery charges respectively for the purposes of sentencing.[2] On appeal, the defendant contends that: (1) his motion for acquittal on the kidnapping charges should have been granted; (2) the trial court erred in instructing the jury on the crime of kidnapping; (3) the five convictions for kidnapping should be merged into one and that conviction should merge with the conviction for robbery;[3] and (4) the court was without jurisdiction to impose a consecutive sentence upon the defendant. We conclude that all counts were properly submitted to the jury and that the sentence imposed was proper.

The facts are not in dispute. In late July, 1977, the defendant and his accomplice moved to the Eugene area and immediately began to plan a robbery. They discovered the name of the manager of a large retail store in the area, and after ascertaining his address, they spent several days in the manager's neighborhood observing his habits. On August 2, 1977, the defendant and his accomplice broke into the manager's home while no one was at home. Shortly

---

[1] Originally, the defendant plead guilty to the charges. He was convicted and sentenced on all eight for a total of 65 years. His conviction was affirmed on appeal, *State v. Dinkel,* 34 Or App 375, 579 P2d 245 (1979), *rev den* 285 Or 195 (1979). Subsequently his plea was set aside in post-conviction proceedings.

[2] These charges should have been merged for conviction purposes as well. *See State v. Cloutier,* 286 Or 579, 596 P2d 1278 (1979). The trial court's order is not clear on this point.

[3] The Supreme Court has pointed out that the term "merger" is "best reserved for the narrow situation when completion of one offense necessarily includes acts sufficient to constitute violation of another statute." *State v. Cloutier, supra,* 286 Or at 586. Our usage here does not strictly comport with *Cloutier,* but it avoids an unnecessary and wordy description of the issues.

thereafter, the manager's 15 year old son and a friend entered the house. The defendant met them at the door with a drawn butcher knife and escorted them into the family room. He informed them of his plan to rob the store and then tied the boys to chairs and gagged them. At some point, the television was turned on for the boys to watch and they were given beverages to drink. Later, the manager's wife and 18 year old son entered the house. They, too, were met at the door by the defendant with a drawn knife and taken to the family room where they were tied and gagged. The defendant assured them that he had no intention of hurting anyone and that they were just waiting for the father to get home so they could proceed to the store where he worked.

Shortly thereafter the manager arrived. The defendant met him at the door with a knife and took him to see his family. After making sure that his family was unharmed, the manager listened to the defendant's plan. He agreed to accompany the defendant to the store and deliver to him the available funds. Before leaving, the defendant and his accomplice separated the family members. The oldest son was moved into the laundry room and the wife was placed just outside the laundry room door. The youngest son was taken to the dining room where he was tied to a post while his friend was left in the family room. The defendant told them that they were going to take the manager to the store, get the cash, and then drop him off in the country. He informed the family that a paid sniper was outside the house with instructions to shoot anyone who attempted to leave and to set fire to the house if anyone screamed. The wires on the telephone were cut.

The defendant, his accomplice and the manager drove to the store, some eight miles away, in the manager's car. The robbery took place without incident. Meanwhile, the oldest son and the manager's wife untied themselves and the other boys, spliced the phone wires together and called the police. The defendant and his accomplice were stopped and taken into custody by the police as they were spotted on the freeway in the manager's car. The manager was driving the car at the time, and was unharmed.

The defendant was charged with five counts of kidnapping in the first degree by taking the named individuals from one place to another with the intent to interfere substantially with their personal liberty for the purpose of holding them as hostages in order to compel the manager to pay or deliver money as ransom. *See* ORS 163.235, 163.225.[4] He moved for a judgment of acquittal with respect to the charges relating to the four people in the house on the ground that they were not moved a sufficient distance or taken from one place to another as required to establish the crime of kidnapping. Additionally, he contends that all the kidnapping charges should have been dismissed because the holding and detention of the persons involved was merely incidental to the crime of robbery. This second ground is also the basis of his claim of merger; we examine it first.

In *State v. Garcia,* 288 Or 413, 605 P2d 671 (1980), the Oregon Supreme Court examined the 1971 revision of the kidnapping statutes as it related to the situation in which a kidnapping was committed in the course of a rape or robbery. After examining the minutes of the Legislative Commission, the court concluded:

"From this history we draw the inference that the Commission, and subsequently the legislature, intended

---

[4] ORS 163.235(1) provides:

"(1) A person commits the crime of kidnapping in the first degree if he violates ORS 163.225 with any of the following purposes:

"(a) To compel any person to pay or deliver money or property as ransom; or

"(b) To hold the victim as a shield or hostage; or

"(c) To cause physical injury to the victim; or

"(d) To terrorize the victim or another person."

ORS 163.225(1) provides:

"(1) A person commits the crime of kidnapping in the second degree if, with intent to interfere substantially with another's personal liberty, and without consent or legal authority, he:

"(a) Takes the person from one place to another; or

"(b) Secretly confines the person in a place where he is not likely to be found."

that there be no conviction of the defendant for the separate crime of kidnapping where the detention or asportation of the victim is merely incidental to the accomplishment of another crime, particularly that of robbery or rape. On the other hand, we infer that the Commission and legislature perceived no reason not to prosecute and punish a malefactor for the separate crime of kidnapping where the detention or asportation is *not merely incidental* to the commission of the underlying crime." *Id.,* at 420.

The Commission's notes reveal concern with the practice of separately prosecuting as kidnapping abductions which are incidental to or an integral part of the commission of another independent crime, such as robbery, in order to secure the death penalty or an increased sentence. The revision of the kidnapping statutes was designed to avoid this prosecutional practice. *Id.,* at 417-18 n 3. According to the court in *Garcia,* "the drafting technique utilized to accomplish [this] legislative purpose is manifested in the definition of the crime of kidnapping." *Id.,* at 420. As finally drafted, ORS 163.225(1) provides that:

"(1) A person commits the crime of kidnapping in the second degree if, *with intent to interfere substantially with another's personal liberty,* and without consent or legal authority, he:

"(a) Takes the person from one place to another, or

"(b) Secretly confines the person in a place where he is not likely to be found.

"* * * * *" (Emphasis supplied).

The court in *Garcia* further noted:

"The Commission reasoned that even though the malefactor's conduct offended the statutory injunctions against rape or robbery, he would be guilty of kidnapping also if in committing rape or robbery he took the victim a 'substantial distance' or held the victim 'a substantial period of time.' As finally enacted the law does not even require that there actually be a substantial interference with the victim's personal liberty; it is only necessary that the perpetrator have the 'intent to interfere substantially' with the victim's personal liberty to make the malefactor guilty of kidnapping if he commits an act proscribed in ORS 163.225. * * *.

"The end result is that the legislature has left it to the process of adjudication to determine whether there was an intent to interfere substantially." *Id.,* at 420-21.

■ ■     The proper way for the defendant to challenge a separate charge of kidnapping, where the kidnapping has occurred as part of a rape or robbery, is to move for a judgment of acquittal on the kidnapping charge.

> "* * * [T]he trial judge must then determine whether the evidence, viewed in the light most favorable to the prosecution, is sufficient to justify a rational factfinder in finding such intent [to interfere substantially with another's personal liberty] beyond a reasonable doubt." *Id.,* at 421.

Where the trial court's ruling is adverse and assigned as error on appeal, it is then our function to determine whether there was sufficient evidence on the issue of intent to submit the case to the jury. If we find that there was no error,

> "* * * the defendant will have been found to be guilty of the separate crime of kidnapping *as intended by the legislature* and therefore subject to punishment for that crime because he has been adjudged guilty of conduct which the legislature has found to be not 'merely incidental' to the rape." *Id.,* at 422.

■     Viewed in this light, we conclude that there was sufficient evidence from which the jury could have found that the defendant intended to interfere substantially with the personal liberty of all his victims. Four of the victims were tied and gagged and told that if they attempted to leave they would be shot. The fifth was forced at knife point to drive some eight miles in his car to the store where he was then forced to assist in the robbery, and was still driving the defendant and his accomplice after the robbery. The trial judge carefully instructed the jury on the law as set forth in *Garcia.* There was no error.

■     The defendant contends that, because the four individuals inside the house were not taken beyond the house or moved a substantial distance, they were not kidnapped as that term is used in ORS 163.225(1)(a). It is conceded that none of the persons involved were moved more than 55 feet. In this respect, the defendant requested the court to instruct the jury as follows:

> "As used above, 'taking the person from one place to another' means the person must have been removed from his place of residence or business, or a substantial distance from the place where he was first found."

Additionally, he objected to the giving of the following instruction:

> "In order for the State to prove the crime of Kidnapping, it is necessary for the State to prove that the defendant took the victim from one place to another with the intent to interfere substantially with the victim's personal liberty. The law does not require movement of any specific distance to be proved by the State. All that is required is that there is some movement of the victim by the defendant with the intent to interfere substantially with the victim's personal liberty."

The Criminal Law Revision Commission discussed the attempt by the Model Penal Code and New York to deal with the problems in the prosecution of kidnapping by setting distance and time limits on an abduction before it can be considered a separate crime. The Commission rejected this approach and declined to set arbitrary limits. Instead, it adopted the criterion of "substantial" interference and left to judicial determination whether a separate crime had been committed. *State v. Garcia, supra,* 288 Or at 417-18 n 3. In *State v. Dorsey,* 44 Or App 721, 724, 607 P2d 204 (1980), this court concluded on the basis of *Garcia* that distance is "one factor to be considered by the trier of fact in assessing whether the interference intended was substantial."

Although the distance involved in this case was minimal, the victims were taken from one place to another. In *State v. Talbot,* 24 Or App 379, 383, 545 P2d 599 (1976), *rev den* (1976), this court stated that the statutory language "takes the person from one place to another" means exactly what it says. This conclusion was adhered to in *State v. Cazares,* 44 Or App 621, 623, 606 P2d 688, *rev den* 289 Or 275 (1980), decided after *Garcia,* where we said

> "No Oregon case has held a kidnapping to be incidental to another crime, such as rape or robbery, on a minimal asportation theory."

There was evidence from which the jury could conclude that the defendant intended to interfere substantially with the personal liberty of his victims, and it is undisputed that they were taken from one place to another. The mechanical approach limiting kidnapping to a defined distance as suggested by the defendant's instruction was

specifically rejected by the Commission in its revision of the kidnapping statute. The instruction given comports with the law as interpreted by *Garcia.* Thus, the trial court did not err in submitting the kidnapping charges to the jury and in refusing to give the requested instruction. The separate convictions for kidnapping and robbery are proper.

■ The defendant also contends that the five convictions for kidnapping should merge into one. He relies on *State v. Cloutier,* 286 Or 579, 596 P2d 1278 (1979), and *State v. Perkins,* 45 Or App 91, 607 P2d 1202 (1980). In *Cloutier,* the court analyzed the problem of "merger" in a variety of contexts. In setting out basic principles to be applied in future cases, the court noted the importance of considering the accused's objective as one factor in determining whether multiple convictions are proper where one offense is committed in the course of another offense. 286 Or at 597. One situation that the court did not attempt to deal with was "the commission of offenses against several victims in a single criminal act or episode, offenses which are declared separate for procedural purposes in ORS 131.505(3)." *Id.,* at 598. In *State v. Perkins, supra,* this court was faced with such a case. In *Perkins,* the defendant and an accomplice entered a restaurant and the defendant stood guard over and threatened the cook and waitress with a club while his accomplice emptied the cash from the restaurant's office. The defendant was charged with two robberies. This court held that, while a threat of force was made against each of the restaurant employees, there was only one robbery because there was a single criminal objective, the theft of the restaurant. We noted that the legislative intent with respect to multiple victims in such cases is not clear and, thus, the policy is "to resolve doubts in the enforcement of the penal code against the imposition of a harsher punishment. * * *" *State v. Perkins, supra,* 45 Or App at 96, quoting from *Bell v. United States,* 349 US 81, 83-84, 75 S Ct 620, 99 L Ed 905 (1955).

■ In the case before us the defendant argues that, because he had only one criminal objective, *viz.,* to rob the store, he can be convicted of only one kidnapping. Such an argument is a further basis for his contention that the kidnapping convictions should merge with the conviction

for robbery. It is another way of saying that the kidnappings were incidental to the crime of robbery. This claim has already been rejected. It has been determined that the evidence indicates that the defendant intended to interfere substantially with the personal liberty of each of his victims. The jury found that a separate intent beyond the intent to commit the robbery existed. Thus, this situation is distinguishable from *Perkins,* and the convictions for each charge of kidnapping were proper.[5]

■ Defendant's last claim is that the trial court was without jurisdiction to impose a consecutive sentence upon him because there is no statutory authority which provides for such a sentence. We recently rejected this claim in *State v. Naylor,* 49 Or App 57, 618 P2d 1311 (1980) on the basis of *State v. Jones,* 250 Or 59, 440 P2d 371 (1968), where the court held that a sentencing court has inherent power to impose consecutive sentences.

Affirmed.

---

[5] There is a problem in applying both *State v. Cloutier, supra,* and *State v. Garcia, supra,* to the same fact situation. In *Cloutier* the court was concerned with a case in which one offense is committed in the course of another offense as part of the same criminal episode and with a single criminal objective. In such cases, it is proper to submit both charges to the jury but not to convict on both. In *State v. Garcia,* the court sets out a different procedure where kidnapping occurs in the course of another crime. The focus seems to be the same, *i.e.,* the accused's intent or objective: once the jury decides the necessary intent was present convictions for both are proper. It is apparently irrelevant that, although an intent to interfere with a person's liberty is evidenced by the defendant's actions, he nevertheless had only one criminal objective, such as rape or robbery. Under *Cloutier,* by contrast, a person may have been guilty of both burglary and robbery and the necessary intent may be present, but he may be convicted of only the robbery if robbery was his objective when he committed the burglary.

We note further that there is also a problem in reconciling the court's examination of legislative history in *Garcia* with the procedure it adopted to determine whether a kidnapping is merely incidental to a robbery or rape. The court was aware of this problem, but offered no solution:

"In the abstract we find it somewhat difficult to envision forcible rape or sodomy which does not entail 'substantial' interference with the personal liberty of the victim; however, it is readily apparent that the drafters of this legislation were attempting to describe conduct of the malefactor not ordinarily inherent in the sexual misconduct itself." *State v. Garcia, supra,* 288 Or 421 n 8.

This statement would apply to the crime of robbery as well.