Argued and submitted October 31, 2007, remanded for resentencing; otherwise affirmed July 30, 2008

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

TUAN ANH NGUYEN,
*Defendant-Appellant.*

Multnomah County Circuit Court
040532737; A127563

190 P3d 462

Stephanie Hortsch, Deputy Public Defender, argued the cause for appellant. On the opening brief were Peter A. Ozanne, Executive Director, Peter Gartlan, Chief Defender, and Jamesa J. Drake, Deputy Public Defender, Office of Public Defense Services, Legal Services Division. On the supplemental brief was Ingrid Swenson, Executive Director.

Doug M. Petrina, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Rosenblum, Judge.

ARMSTRONG, J.

## ARMSTRONG, J.

Defendant appeals a judgment of conviction for second-degree robbery with a firearm, ORS 164.405; ORS 161.610, second-degree kidnapping with a firearm, ORS 163.225; ORS 161.610, and first-degree burglary, ORS 164.225. He advances three assignments of error on appeal: (1) the trial court erred in denying his motion for a judgment of acquittal on the kidnapping charge; (2) it erred in imposing consecutive sentences; and (3) it erred in denying his motion in arrest of judgment that challenged the constitutionality of the kidnapping statute. We affirm without discussion the trial court's denial of defendant's motion in arrest of judgment. On the other assignments, we affirm the trial court's denial of the motion for a judgment of acquittal but remand for resentencing.

The pertinent facts are undisputed. Defendant broke into the home of 17-year-old B. L. while B. L. was getting ready for school. Defendant surprised her as she entered her bedroom, pointed a gun at her, and told her to be quiet. He ordered her up against the wall, and she complied. He then had her move to her bed—a distance of about six feet—and lie face down so that he could handcuff her hands behind her back. Defendant gagged her by stuffing underwear into her mouth and securing it with a necktie around her head. He then had her move from the bed to the floor, where he bound her ankles and covered her head with a shirt.

After B. L. was securely bound, defendant asked her the location of her money. She indicated an envelope on her computer desk. When defendant asked where else he could find money, B. L. indicated that she did not know. B. L. heard defendant leave the room and search the house. At some point, he reentered B. L.'s room, only to leave again. B. L. heard defendant close the front door, but she did not attempt to escape for a short while because she was unsure whether defendant had left the house and was afraid that he would hurt her if she moved. After a time, B. L. freed one of her hands and, subsequently, unbound her ankles and gag and called the police.

Defendant, who was wearing a nylon stocking during the encounter, was later identified by DNA samples taken from the stocking. After a trial to the court, defendant was convicted of second-degree robbery with a firearm, second-degree kidnapping with a firearm, and first-degree burglary. The court sentenced defendant to 70-month concurrent prison terms on the robbery and kidnapping convictions. It sentenced him to a 34-month prison term on the burglary conviction, to be served consecutively to the kidnapping sentence.

■    On appeal, defendant challenges the trial court's denial of his motion for a judgment of acquittal on the kidnapping charge, arguing that the state failed to present sufficient evidence from which a rational trier of fact could reasonably infer that defendant moved the victim from one place to another with the intention to substantially interfere with her liberty. He also challenges the sentencing court's imposition of a consecutive sentence, arguing that, absent a jury determination of the facts required to support the imposition of consecutive sentences, the consecutive sentence violates Article I, section 11, of the Oregon Constitution and the Sixth and Fourteenth Amendments to the United States Constitution. In response, the state argues that the evidence at trial was sufficient for a rational factfinder to infer that defendant intended to confine B. L. for a substantial period of time and, therefore, intended to substantially interfere with her liberty. Furthermore, the state argues, relying on *State v. Herrera-Lopez*, 204 Or App 188, 195, 129 P3d 238, *rev den*, 341 Or 140 (2006), that the sentencing court had the authority to impose a consecutive sentence because the court did not have to find facts to impose that sentence beyond those that formed the basis for defendant's convictions.

■    We begin by addressing defendant's contention that the state failed to present sufficient evidence for a factfinder to infer that defendant had the requisite intent to substantially interfere with the victim's liberty. We review for errors of law, *State v. Franklin*, 283 Or 439, 447, 583 P2d 557 (1978), viewing the evidence in the light most favorable to the state. *State v. Fry*, 191 Or App 90, 92, 80 P3d 506 (2003).

Defendant was convicted under ORS 163.225(1), which defines second-degree kidnapping in pertinent part:

"A person commits the crime of kidnapping in the second degree if, with intent to interfere substantially with another's personal liberty, and without consent or legal authority, the person:

"(a) Takes the person from one place to another; or

"(b) Secretly confines the person in a place where the person is not likely to be found."

The statute includes two elements, one physical and one mental, that the state must prove to convict defendant of the offense: (1) that defendant either moved the victim from one place to another or secretly confined the victim, and (2) that defendant had the intent, while committing the physical act, to substantially interfere with the victim's liberty.

Defendant was convicted under subsection (1)(a), the movement or asportation prong of the statute. He does not argue that the state failed to present evidence sufficient to establish asportation; rather, he argues that the evidence at trial was insufficient to support a finding that he had the requisite *intent to substantially interfere with B. L.'s liberty* when moving her. Defendant contends that any movement of B. L. from one place to another was merely incidental to the other crimes—burglary and robbery—that he was committing and, therefore, could not support a finding that he intended to substantially interfere with B. L.'s liberty. Defendant further argues, relying on the Supreme Court's decisions in *State v. Wolleat*, 338 Or 469, 111 P3d 1131 (2005), and *State v. Garcia*, 288 Or 413, 605 P2d 671 (1980), that, because he was charged under subsection (1)(a), the state had to show that he moved the victim a "substantial distance" in order for the factfinder to be able to infer that he intended to substantially interfere with the victim's liberty, and, because he moved the victim only a short distance in her bedroom, the state failed to make the necessary showing.

The state responds that defendant's movement and confinement of the victim was not merely incidental to the commission of other crimes, because there was sufficient evidence to show that he intended to substantially interfere

with the victim's liberty. The state argues that the evidence supports a finding that defendant had the requisite intent because, by moving B. L. from the bed to the floor, binding her feet and legs, gagging her, and covering her head, a factfinder could infer that defendant acted with the intent to confine B. L. for a "substantial period of time" and thereby to substantially interfere with her liberty. Furthermore, the state argues that defendant misreads *Wolleat* and *Garcia* in asserting that, in order to prove intent in an asportation case, the state must prove that defendant moved the victim a substantial distance. According to the state, a defendant has the requisite intent for kidnapping if he intends *"either* to move the victim a 'substantial distance' *or* to confine the victim for a 'substantial period of time.'* " *Wolleat*, 338 Or at 475 (emphases added). Because the evidence supports a finding that defendant intended to confine the victim for a substantial period of time, the evidence also supports a finding that defendant intended to substantially interfere with the victim's liberty.

We agree with the state. In *Garcia*, the Supreme Court concluded that the legislature did not intend for a defendant to be convicted of the separate crime of kidnapping when the defendant's movement of a victim is *merely incidental* to the commission of an underlying crime. 288 Or at 420-23. However, it further concluded that the crime of kidnapping is not merely incidental to another crime when "the defendant [has] the intent to interfere substantially with the victim's personal liberty." *Id.* at 423. Furthermore, the court concluded in *Wolleat* that, by protecting "personal liberty," the legislature was protecting a person's freedom of movement and that, "in order for the interference to be substantial, a defendant must intend either to move the victim a 'substantial distance' or to confine the victim for a 'substantial period of time.'* " 338 Or at 475.

Defendant mistakenly assumes that the foregoing statement in *Wolleat* addresses the *physical act* element of the kidnapping statute. In his view, the phrase "move the victim a 'substantial distance'* " refers only to subsection (1)(a) (asportation), and the phrase "confine the victim for a 'substantial period of time'* " refers only to subsection (1)(b) (secret confinement). However, those phrases apply to the

*mental state* element of the statute and address the *substantiality of the interference with the victim's liberty*, not the category of the kidnapping charge. Our case law bears out that distinction.

We have said that "[t]he distance a victim [is] moved is one factor to be considered by the trier of fact in assessing the substantiality of the defendant's intended interference with the victim's liberty," *State v. Thomas*, 139 Or App 308, 312-13, 911 P2d 1237 (1996) (citing *State v. Dinkel*, 49 Or App 917, 924, 621 P2d 626 (1980)), but it is not the only factor. In *Thomas*, an asportation case, we concluded that there was ample evidence from which a rational juror could find that the defendant intended to interfere substantially with the victim's liberty, relying not just on the distance that he moved the victim, which was minimal, but also on other factors such as the defendant's desire for "privacy" (he confined the victim in her bathroom at knifepoint) and the violent and frightening nature of the imprisonment. Furthermore, in *Dinkel*, another asportation case, we concluded that a rational juror could infer the requisite intent from evidence that the victims were tied and gagged—in other words, confined—and threatened with death, even though the movement from place to place was minimal. 49 Or App at 922-25. Those cases emphasize that, in an asportation case, we consider whether the victim was moved a substantial distance *and* whether the victim was confined for a substantial period of time in assessing whether the evidence is sufficient to permit a factfinder to infer that the defendant had the intention to substantially interfere with a victim's personal liberty; we are not restricted to considering only whether the victim has been moved a substantial distance.

The Supreme Court's recent decision in *State v. Zweigart*, 344 Or 619, 188 P3d 242 (2008), is consistent with that understanding of the kidnapping statute. In *Zweigart*, the court reversed a kidnapping conviction on the ground that the limited movement of the victim during a robbery, without more, was insufficient to support an inference that the defendant intended to substantially interfere with the victim's liberty. In doing so, the court noted that the victim had not been tied up or otherwise restrained, which implies that facts other than the distance a victim has been

moved properly bear on whether a defendant in an asportation case acted with the requisite intent.

We now turn to the question before us: Is the evidence, viewed in the light most favorable to the state, sufficient to support an inference that defendant moved the victim from one place to another with the intent to substantially interfere with her liberty? Defendant surprised the victim in her home, brandishing a deadly weapon—a gun. He held the victim at gunpoint, ordering her to be silent while he moved her around the room to bind and gag her. He left her tied up in her room while he robbed the house. The victim testified that she was frightened that defendant would hurt her if she tried to move or escape. Based on that evidence, a reasonable factfinder could infer that defendant intended to restrain the victim for a substantial period of time and thereby intended to substantially interfere with her personal liberty.[1] The distance that defendant moved the victim is not determinative here. Moreover, because it is reasonable to infer that defendant had the requisite intent for kidnapping, it follows that the kidnapping was not merely incidental to the commission of defendant's other crimes. *See Garcia*, 288 Or at 423. The trial court did not err in denying defendant's motion for a judgment of acquittal on the kidnapping charge.

■ Because we affirm on defendant's first assignment of error, it is necessary to address defendant's challenge to the court's imposition of a consecutive sentence. Defendant argues that, under *State v. Ice*, 343 Or 248, 170 P3d 1049

---

[1] *Thomas* informs our decision. 139 Or App at 310-13. In *Thomas*, the defendant broke into the victim's home while she was away. When the victim returned, the defendant grabbed her and held her at knifepoint, threatening to kill her. He locked the door, grabbed the victim by the hair and dragged her into the bathroom (a short distance) "for privacy," where he threw her on the floor, repeatedly threatened to kill her, and raped her. At one point, the defendant left the bathroom, telling the victim that he would kill her if she tried to escape before he returned. The defendant was subsequently convicted of kidnapping by asportation (ORS 163.225(1)(a)), as well as multiple counts of rape, coercion, and burglary. On appeal, he argued that the evidence was insufficient to support an inference that he had the requisite intent to kidnap the victim, stating that "the movement of the victim into the bathroom was 'only incidental to the other crimes,' and did not manifest an 'intent to interfere substantially with the victim's personal liberty.' " *Id.* at 312. We held that the defendant's desire for "privacy" and the victim's "frightening tale of capture and imprisonment" presented ample evidence for a rational jury to determine that the defendant intended to substantially interfere with the victim's liberty. *Id.* at 313.

(2007), *cert granted,* ___ US ___ , 128 S Ct 1657 (2008), the court erred in relying on judicial findings, rather than those made by a jury, to impose a consecutive sentence. The state responds that the trial court had authority to impose a consecutive sentence because no additional factfinding was necessary. It argues that, because burglary is at least "as serious" a crime as kidnapping, and the kidnapping was not merely incidental to the burglary, then ORS 137.123(5)(a)[2] authorized the court to impose a consecutive sentence without the need for the court to find any facts. We recently rejected that argument in *State v. Loftin,* 218 Or App 160, 178 P3d 312 (2008), and we adhere to our decision in that case. We therefore reverse the imposition of a consecutive sentence and remand for resentencing.

Remanded for resentencing; otherwise affirmed.

---

[2] ORS 137.123(5)(a) provides:

"The court has discretion to impose consecutive terms of imprisonment for separate convictions arising out of a continuous and uninterrupted course of conduct only if the court finds:

"(a) That the criminal offense for which a consecutive sentence is contemplated was not merely an incidental violation of a separate statutory provision in the course of the commission of a more serious crime but rather was an indication of defendant's willingness to commit more than one criminal offense[.]"