Argued October 31, affirmed as modified and
remanded November 13, 1973

STATE OF OREGON, *Respondent, v.* LARRY E.
SWAGGERTY (No. 80365), *Appellant.*

515 P2d 952

*J. Marvin Kuhn,* Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and THORNTON and TANZER, Judges.

TANZER, J.

Defendant was convicted of first degree kidnapping and appeals. He assigns as error the denial of his motion for judgment of acquittal, claiming that the proof did not show kidnapping, but that if kidnap-

ping were proved, then it was only kidnapping in the second degree. A summary of the facts is required.

At 2:30 a.m., the defendant approached the victim who was sitting in her car in the parking lot of a bar. He asked the time. As she rolled down the window, the defendant put the point of a knife into her arm and warned her that he would kill her if she screamed or tried to escape. He then entered her car and drove away with her. Defendant soon stopped and took $17 out of the victim's purse. He then proceeded to unzip her dress and to fondle her. In the process, he struck her once and instructed her not to cry. He continued feeling her and making obscene remarks. They then returned to the parking lot, transferred to the defendant's car and drove off. Defendant told the victim that he would kill her if she identified him to the police. They then proceeded to a motel which was full and then to another motel at which defendant obtained a room. There, victim submitted to rape. Twice defendant told her that if she went to the police he would "take care of" her and her children. Although the knife was never again shown and no more actual force was used, defendant stayed close enough to the victim at all times to prevent her escape.

Pursuant to his earlier word and the victim's urgings, the defendant returned the victim to her automobile in time for her to return home to her children before proceeding to work. During this period, the defendant was apologetic and contrite, rather than belligerent.

■ Defendant claims that the abduction was a part of the primary crime, rape, and not chargeable as a separate offense. See *People v. Hatch,* 25 App Div 2d

606, 267 NYS2d 651 (1966). ORS 163.225 (1) requires only that the victim be taken "from one place to another." Whether the asportation of the victim to the limited degree required to commit the primary crime will support a kidnapping conviction need not be decided here. In this case the abductive asportation goes beyond that necessary to rob or rape. Therefore, it is sufficiently extensive as to be considered a crime apart from the primary crime. *Cf. People v. Miles,* 23 NY2d 527, 540, 297 NYS2d 913, 245 NE2d 688, *cert denied* 395 US 948 (1969); *People v. Daniels,* 71 Cal 2d 1119, 80 Cal Rptr 897, 459 P2d 225 (1969).

Defendant's argument that the proof showed kidnapping in only the second degree poses the more difficult problem. ORS 163.225 (1) defines kidnapping in the second degree, a Class B felony, as follows:

"A person commits the crime of kidnapping in the second degree if, with intent to interfere substantially with another's personal liberty, and without consent or legal authority, he:

"(a) Takes the person from one place to another; or

"(b) Secretly confines the person in a place where he is not likely to be found."

The degree of force required for kidnapping in either degree is found in the phrase "without consent." That phrase is defined at ORS 163.215 (1) as follows:

"'Without consent' means that the taking or confinement is accomplished by force, threat or deception * * *"

Kidnapping in the first degree is an aggravated form of second degree kidnapping. To be guilty, one must commit second degree kidnapping with an intent

which renders the crime more dangerous. It is defined by ORS 163.235 (1) as follows:

> "A person commits the crime of kidnapping in the first degree if he violates ORS 163.225 with any of the following purposes:
>
> "(a) To compel any person to pay or deliver money or property as ransom; or
>
> "(b) To hold the victim as a shield or hostage; or
>
> "(c) To cause physical injury to the victim; or
>
> "(d) To terrorize the victim or another person."

In this case, the indictment charged the defendant under subsection (d) "with the purpose of terrorizing said [victim]."

■ Under the new statutory scheme kidnapping in either degree is committed by means of "force" or "threat." In this case the defendant initially put the point of a knife to the victim's arm without sufficient force to leave a mark on the skin, and threatened to kill her if she screamed or escaped. He later "back-handed" her, but the blow was not hard. Two or three times he threatened to kill her or her children if she went to the police. Those acts constitute "force" and "threat" and his commission of them evidence a mental state of intention to use such "force" and "threat."

■■ In order to have committed kidnapping in the first degree, it is necessary that defendant's state of mind be such that he intends a purpose more dangerous than force and threat. He must intend either to compel the payment of ransom, to use the kidnapped person as a hostage, to cause physical injury to that person, or, as alleged in this case, to "terrorize" his victim.[1]

---

[1] We are here concerned with the defendant's state of mind and the danger of that state of mind to the public, rather than the

The drafters of ORS 163.235 intended to deter something more than the intent to cause fear aroused by force or threat. The commentary to the Proposed Oregon Criminal Code 100, § 99 (1970), attempts to define it as follows:

> ". 'Terrorize' is defined by *Webster's* as meaning 'to fill with terror; to coerce, maintain power, etc. by inducing terror.' The dictionary defines terror as meaning 'intense fear . . . the quality of causing dread; terribleness.' *Webster's New World Dictionary* (Coll ed 1968). The verb form of the word seems particularly apt for use in a kidnapping statute; and the American Law Institute indicates that the term was employed in the Model Penal Code to cover 'vengeful or sadistic abductions accompanied by threats of torture, death or other severely frightening experience.' [Commentary, Tent. Draft no. 11 at 18 (1960)]. Section 99 [now ORS 163.235] adopts this view and is concerned with the *intent* or *purpose* of the actor and not with the subjective effect of his actions upon either the person kidnapped or other persons." (Second bracket ours.)

■ The conduct recounted above, however detestable it may be, would appear to make out sufficient force to be elements of first degree rape or first degree rob-

---

effect of the conduct upon the victim's state of mind. It is necessary that the defendant intend to terrorize, but not relevant whether the victim is terrified. The commentary states:

"The rationale behind the provision for a higher degree of the crime is the increased danger to the victim when one or more of the above purposes is present. Therefore, the nature of the defendant's purpose is the determinative factor in assessing the degree of the offense and ultimately the range of the penalty to be imposed." Proposed Oregon Criminal Code 99, § 99 (1970).

bery,[2] but the facts are not sufficiently aggravated as aspects of the crime of kidnapping to rise to the intense, vengeful or sadistic level of intent proscribed by the first degree kidnapping statute.

■ The facts believed by the jury clearly make out the lesser included crime of kidnapping in the second degree. The error does not require reversal. The judgment is modified to reflect conviction of the lesser crime. We vacate the sentence and remand the cause for resentencing for the crime of kidnapping in the second degree. We note that the previously imposed sentence of ten years' imprisonment is within the statutorily authorized punishment for the crime of second degree kidnapping, but we cannot say with certainty that the trial judge would have imposed the same sentence had the conviction been for the lesser crime. *State v. Branch,* 244 Or 97, 101, 415 P2d 766 (1966); *State v. Mayo,* 13 Or App 582, 511 P2d 456, Sup Ct *review denied* (1973).

Affirmed as modified, and remanded for resentencing.

---

[2] This record does not indicate why the Grand Jury chose to charge defendant with kidnapping alone instead of rape, robbery, or a combination of those three charges, all Class A felonies. We look only to the validity of the kidnapping charge.