STATE OF OREGON, *Respondent,*
*v.*
DAVID WAYNE STRICKLAND, *Appellant.*
(Nos. 101203, 101204, 97844, 97845, CA 9181)

584 P2d 310

Thomas J. Crabtree, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Donald L. Paillette, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Schwab, Chief Judge, and Lee, Richardson and Joseph, Judges.

JOSEPH, J.

**JOSEPH, J.**

Defendant appeals his jury conviction on charges of rape in the first degree (ORS 163.375), kidnapping in the first degree (ORS 163.235) and kidnapping in the second degree (two counts, ORS 163.225). He argues that the court erred in denying a motion to suppress his identification by the rape victim at the scene of his arrest, that the evidence did not support a conviction on the first degree kidnapping charge and that the court should have merged the first degree kidnapping and rape charges for the purpose of sentencing.

The rape victim and two companions left a restaurant in downtown Salem at approximately 3:50 a.m. As they drove from the parking lot in her car (a hatchback model), the passenger in the back seat discovered a man hiding in the rear of the car. The man, who had a mask pulled over his head and a towel wrapped around his hand, sat up and told them to "do as I say and no one will get hurt." He ordered the driver to proceed north on Liberty Street several blocks. Near the corner of Liberty and Broadway Streets he forced one of the passengers out of the car, telling the passenger not to run or he would "blow [the driver's] head off." He said that the driver would come back to pick him up "in a little while."

He then ordered the driver to turn south on Broadway. At the State Accident Insurance Fund building he commanded the second passenger to leave the car, again saying that the driver would return shortly. He directed the driver to continue south and climbed into the back seat. Near South Salem High School he ordered her to park the car and turn off the lights. She turned to look at him, and he removed the mask. She saw that he had taken the towel off his hand and that he actually had no gun. He then climbed into the front seat and tried to kiss her. She resisted. He forced her into the rear seat of the car and raped her. She later estimated that they were parked a total of 20 to 25 minutes.

Afterward, he had her take him back downtown. He got out of the car about one and a half blocks from the restaurant from which he had abducted her and walked northward. She drove back to pick up the first passenger and then returned to the restaurant. She arrived at approximately 4:50 a.m.; the police were waiting. She gave them a description of her assailant, who had also been described by one of the passengers. A short time later the officers received a report of a possible suspect who had been stopped in the downtown area. The victim was taken to him but said he was not the man who had raped her. Almost immediately thereafter (at approximately 5:00 a.m.) she was taken to a downtown parking lot located a few blocks north of the restaurant to view another possible suspect. He was standing beside a police officer in a well-lighted area where he had been stopped.[1] As soon as she saw defendant, she began crying and shouted, "That's the man." She was taken from the car and toward defendant to get a closer look. She approached a little closer, remaining positive in her identification and stating, "Yes that's him; I have no doubt."

Defendant contends that evidence of the pre-trial identification was inadmissible under *Manson v. Brathwaite,* — US —, — S Ct —, 53 L Ed 2d 140 (1977), and *State v. Classen,* 31 Or App 683, 571 P2d 527 (1977), *rev allowed,* 282 Or 1 (1978). We do not agree. Although the procedure is to some extent inherently suggestive, on-the-scene confrontation between a victim and a suspect shortly after the crime is an accepted means of identification. *State v. McJunkin,* 27 Or App 401, 556 P2d 164 (1976), *rev den* (1977); *State v. Madden,* 1 Or App 242, 461 P2d 834 (1969). The state properly concedes that the procedure is subject to the limitations set forth in *Stovall v. Denno,* 388 US 293, 87 S Ct 1967, 18 L Ed 2d 1199 (1967), *Neil*

---

[1]Two police officers testified that the area was very well lighted. The victim testified, that it was not so well lighted. Under *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968), we resolve evidentiary conflicts as to historical facts in the manner which supports the court's order.

*v. Biggers,* 409 US 188, 93 S Ct 375, 34 L Ed 2d 401 (1972), and *Manson v. Brathwaite, supra.* In this instance, the procedure was neither unnecessarily suggestive (*see Stovall v. Denno, supra*) nor so lacking in indicia of reliability as to give rise to any substantial likelihood of misidentification. *See Manson v. Brathwaite, supra.* The confrontation took place less than an hour after the crime was committed; she had ample opportunity to view closely the man during the time they were parked and good reason to take note of his appearance; defendant's actual appearance corresponded in all significant respects to the description she had given;[2] and she was instantly positive in her identification. The trial court did not err in denying the motion to suppress.

■  Defendant asserts that the evidence did not support a conviction for kidnapping in the first degree separate from the rape charge.[3] ORS 163.225 and 163.235 define two degrees of kidnapping. ORS 163.225 provides in relevant part:

"* * * A person commits the crime of kidnapping in the second degree if, with intent to interfere substantially with another's personal liberty, and without consent or legal authority, he:

"(a) Takes the person from one place to another * * *"

ORS 163.235 provides that

"[a] person commits the crime of kidnapping in the first degree if he violates ORS 163.225 with any of the following purposes:

"(a) To compel any person to pay or deliver money or property as ransom; or

"(b) To hold the victim as a shield or hostage; or

---

[2]The victim could not remember whether or not the man had a mustache. His photograph shows he had a faint mustache, which makes her difficulty understandable.

[3]Defendant also made motions for judgment of acquittal on the kidnapping in the second degree charges. The evidence clearly supported convictions on those charges (*see State v. Talbot,* 24 Or App 379, 545 P2d 599, *rev den* (1976)), and he does not press that issue on appeal.

"(c) To cause physical injury to the victim; or
"(d) To terrorize the victim or another person.
"* * * * *."

Second degree kidnapping is a Class B felony carrying a maximum sentence of 10 years; first degree kidnapping is a Class A felony carrying a maximum sentence of 20 years. We have suggested that in some circumstances a limited movement of a person from one place to another in order to carry out some crime other than kidnapping may be incidental to the other crime and not separately punishable. *State v. Steele,* 33 Or App 491, 577 P2d 524 (1978); *State v. Talbot,* 24 Or App 379, 545 P2d 599, *rev den* (1976); *State v. Swaggerty,* 15 Or App 343, 515 P2d 952 (1973). This is not such a case. Defendant was subject at least to separate conviction on charges of first degree rape and second degree kidnapping in regard to the principal victim.

The substantial question is whether the evidence showed that the kidnapping was done with a purpose which would bring it within the first degree kidnapping provision. The indictment alleged that defendant had kidnapped the principal victim with the purpose of causing physical injury to her. ORS 163.235(1)(c). The evidence supported an inference that his purpose was to rape her. That purpose is clearly within the unambiguous terms of ORS 163.235(1)(c). ORS 161.015(6) defines "physical injury" as "impairment of physical condition or substantial pain." One who has the purpose of forcibly raping another has the purpose of causing physical injury.[4] The final question is whether the court should have merged the first degree kidnapping and first degree rape charges for sentencing. The answer to that question lies in the application of *State*

---

[4]In *State v. Swaggerty,* 15 Or App 343, 515 P2d 952 (1973), the defendant kidnapped a woman and raped her. He was convicted of both first degree rape and first degree kidnapping, the indictment alleging that he had kidnapped her for the purpose of terrorizing her. We held that the evidence did not support a conviction for first degree kidnapping. We did not suggest that evidence of a purpose to rape cannot establish a purpose to cause physical injury.

*v. Gilbert,* 281 Or 101, 574 P2d 313 (1978), and subsequent decisions of this court. In *State v. Cloutier,* 33 Or App 121, 575 P2d 996, *rev allowed,* 282 Or 385 (1978), the question was whether the defendant could be sentenced on charges of both burglary and attempted theft, where the basis of the burglary charge was that he had entered with the purpose of committing theft. We held that *Gilbert* required an affirmative answer.

██ The statutory scheme in question here is similar to that involved in *Cloutier.* Only a purpose to rape, and not the rape itself, is required under the first degree kidnap provision. Neither offense is necessarily included within the other, and *Gilbert* suggests that ORS 131.505(2) applies:

> "When the same conduct or criminal episode violates two or more statutory provisions, each such violation constitutes a separate and distinct offense."

The enhanced penalties for first degree kidnapping are intended to reflect the increased risk presented to the victim by the chance that the proscribed purpose will be achieved (Proposed Oregon Criminal Code 99, Commentary, §§ 98-99 (1970)), and the purpose will in many instances be proven indirectly by proof of the commission of the act. Similar considerations were present in *Cloutier.*

In *State v. Girard,* 34 Or App 85, 578 P2d 415 (1978), the issue was whether charges of first degree escape and second degree assault should be merged where evidence of a single violent act and the direct and immediate effect of that act were used to support the separate convictions. Although the two offenses were technically separate, we held that the legislature did not intend separate sentences.

In this case the separate convictions were not based upon proof of a single action and its effect. This situation is therefore distinguishable from *Girard.* We find nothing, however, in the statutory scheme or in the legislative history to distinguish this case from

*Cloutier.* The court did not err in imposing separate sentences.

Affirmed.