Submitted on remand from the Oregon Supreme Court July 22, convictions on Counts 16, 17, and 21 for second-degree kidnapping reversed; sentences vacated; remanded for resentencing; otherwise affirmed December 7, 2005, both petitions for review denied February 14, 2006 (340 Or 157)

## STATE OF OREGON,
*Respondent,*

*v.*

## DAMIEN DESHAWN DOUGLAS,
aka Damien Dushane Douglas,
aka Damien Douglas,
*Appellant.*

0005-34307; A115287

125 P3d 751

Andrew S. Chilton and Chilton, Ebbett & Rohr, LLC, for appellant.

Damien Deshawn Douglas filed the supplemental briefs *pro se*.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Katherine H. Waldo, Senior Assistant Attorney General, for respondent.

Before Haselton, Presiding Judge, and Linder and Ortega, Judges.

HASELTON, P. J.

## HASELTON, P. J.

This case is before us on remand from the Oregon Supreme Court. Defendant was convicted of six counts of first-degree robbery, ORS 164.415, six counts of second-degree robbery, ORS 164.405, six counts of second-degree kidnapping, ORS 163.225, and one count each of first-degree burglary, ORS 164.225, and felon in possession of a firearm, ORS 166.270. We affirmed defendant's convictions without opinion. *State v. Douglas*, 193 Or App 327, 92 P3d 767 (2004). The Oregon Supreme Court allowed review and vacated and remanded this case for reconsideration in light of *State v. Wolleat*, 338 Or 469, 111 P3d 1131 (2005). *State v. Douglas*, 338 Or 680, 115 P3d 245 (2005). We reject without discussion all of defendant's arguments except those concerning his kidnapping convictions. For the reasons set forth below, we affirm some of defendant's kidnapping convictions, reverse others, and remand for resentencing.

Because defendant was convicted after a jury trial, we state the facts in the light most favorable to the state. *State v. Hale*, 335 Or 612, 614, 75 P3d 448 (2003), *cert den*, 541 US 942 (2004). At approximately 2:30 a.m. on May 21, 2000, three people, Jason Laroque, Gina Laroque, and Chad Welty, were waiting for a taxicab outside the Wilshire Tavern, which they had just left after it closed for the night. Defendant, along with his accomplice Tecuma Jackson, approached the Laroques and Welty. Defendant was wielding an assault rifle. Defendant and Jackson ordered the three to knock on the door of the closed tavern to get back in. Welty found that the door was locked and knocked to get back into the tavern. He told the bartender, Benjamin Childs, that he needed to call for another cab because no cab had shown up.

Childs was inside the closed tavern with his girlfriend, Audrie Zaccone, and an off-duty bartender, Jacob Groves. Childs unlocked and opened the door. Defendant and Jackson forced the Laroques and Welty into the tavern at gunpoint and ordered the Laroques, Welty, Childs, Zaccone, and Groves to go to the bar and keep their hands on the counter. Defendant kept the gun on the six people at the bar while Jackson checked the premises. Jackson then asked for

the combination to the safe. Childs turned over the money from the safe, from the till, and from the video poker machines to Jackson. Jackson then ordered the six to move 25 to 30 feet from the bar to behind the pool table and to lie on the floor and "count to 200 if [they] wanted to live." The six complied, and defendant and Jackson fled.

A police officer, who had the tavern under surveillance and saw defendant and Jackson take the Laroques and Welty into the tavern, concluded that a robbery was underway and called for backup. When defendant and Jackson ran from the tavern and got into a car, officers pursued and arrested them. As noted above, defendant ultimately was convicted of a number of crimes, including six counts of second-degree kidnapping—one each for the Laroques, Welty, Childs, Zaccone, and Groves.

On appeal, defendant asserts that the trial court erred in denying his motion for judgments of acquittal on the six counts of second-degree kidnapping. ORS 163.225(1) provides:

"A person commits the crime of kidnapping in the second degree if, with intent to interfere substantially with another's personal liberty, and without consent or legal authority, the person:

"(a)   Takes the person from one place to another[.]"

Defendant asserts that the state did not present sufficient evidence that he acted with intent "to interfere substantially with another's personal liberty." He argues that, when the movement or detention of a crime victim is "merely incidental" to the commission of another crime such as robbery, that intent requirement is not met. On remand, defendant particularly invokes *Wolleat*, 338 Or at 478, in which the Oregon Supreme Court reversed the defendant's conviction for first-degree kidnapping, holding that the state had failed to prove that the defendant intended to interfere substantially with the victim's liberty.[1]

---

[1] Both first-degree and second-degree kidnapping have the same intent requirement in that regard. ORS 163.225; ORS 163.235.

The material facts in *Wolleat* were as follows:

"Defendant and the victim lived together and were engaged to be married. After spending the evening out drinking with friends, defendant returned home shortly after midnight. He went into the bedroom where the victim was sleeping, grabbed her by her hair, and pulled her out of bed. Still holding the victim by her hair, defendant dragged her approximately 15 to 20 feet from the bedroom into the living room, where he repeatedly struck her. The victim broke away from defendant and fled from the house."

*Id.* at 471. The defendant in that case was charged with both assault and first-degree kidnapping. Relying on *State v. Garcia*, 288 Or 413, 605 P2d 671 (1980), the court concluded that the statute's reference to "liberty" concerned "interfering with a person's liberty to move freely," and that there is no " 'separate crime of kidnapping where the detention or asportation of the victim is merely incidental to the accomplishment of another crime.' " *Wolleat*, 338 Or at 474 (quoting *Garcia*, 288 Or at 420). The court therefore concluded that, "in order for the interference to be substantial, a defendant must intend either to move the victim a 'substantial distance' or confine the victim for a 'substantial period of time.' " *Wolleat*, 338 Or at 475 (quoting *Garcia*, 288 Or at 420-21).

The court then turned to a question not addressed in *Garcia*—how to measure a "substantial distance." Relying on legislative history that dragging a rape victim from one room to another or taking a holdup victim to a different room to open a safe would be considered merely incidental, *Wolleat*, 338 Or at 476-77, the court concluded:

"Moving a victim from one room to another while committing another crime does not constitute moving the victim a substantial distance. Put differently, that movement is not sufficient, by itself, to give rise to an intent to interfere substantially with the victim's liberty to move freely."

*Id.* at 478.

The court in *Wolleat* then concluded that, although the evidence there supported an inference that the defendant had intended to move the victim the distance that he did (15 to 20 feet), the evidence did not support an inference that the

defendant intended to move the victim a "substantial distance" (and, thus, intended to "substantially interfere" with her liberty):

> "However, an intent to do only that [*viz.*, moving the victim 15 to 20 feet] would be insufficient to establish the mental element necessary to prove kidnapping—a point the legislative history makes clear. In order to find defendant guilty of kidnapping, a reasonable juror would have to be able to infer that defendant *intended either to move the victim a greater distance than he did or to transport her to a place of confinement.* As our recitation of the facts makes clear, no reasonable juror could draw that inference from this record.
>
> "We recognize, as the court did in *Garcia,* that in most cases the question whether the defendant intended to interfere substantially with the victim's liberty will present a question of fact for the jury. *Id.* In some cases, however, the intended movement will be so minimal that a court can say, as a matter of law, that no reasonable juror could find that the defendant had the statutorily required intent."

338 Or at 478 (emphasis added).

The question presented here is whether this case falls within the group of "most cases" in which the determination of the defendant's intent "presents a question of fact for the jury," or whether the intended movement was "so minimal" as to preclude a finding of the requisite intent. *Id.* Even more precisely, did defendant's conduct toward, and the circumstances of, the various victims differ so substantially that the analysis presented in *Wolleat* compels different dispositions as to different kidnapping counts in this case?

We begin with the victims forced from the curb into the tavern. The evidence as to those three victims—the Laroques and Welty—is that defendant and Jackson took them at gunpoint from their location on the street, ordered them to gain access to a locked tavern, then forced them into the tavern at gunpoint and, ultimately, compelled them to lie behind the pool table. Although the record does not disclose the exact distance that defendant forced those three victims to move, it would not appear to have been substantially

greater than the 15 to 20 foot movement in *Wolleat*. Nevertheless, and unlike in *Wolleat*, the movement here was sufficient, in the totality of the circumstances, to permit the trier of fact to find "an intent to interfere substantially with the victim's liberty to move freely." *Id.*

The distinction from *Wolleat* is functional. Defendant's movement of the first group of victims was not "merely incidental" to the robbery, as the movement in *Wolleat* was to the assault there. Defendant did not merely move those victims from room to room in the course of committing some other crime against *them*. Rather, defendant interfered with those victims' liberty in order to gain entry to the tavern and to commit other crimes against other persons located inside. That is, the kidnapping was a predicate crime—and therefore separate—the accomplishment of which was needed in order for defendant to get inside the building that he intended to rob.[2] Thus, regardless of the actual distance that defendant moved the Laroques and Welty from the curb, there is evidence from which a jury could find that, in so doing, defendant intended to interfere substantially with their liberty.

■■ Both the result in *Wolleat* and the legislative history discussed by the court in *Garcia* support our conclusion that, under these circumstances, a jury question existed as to defendant's intent. As noted above, the evidence in *Wolleat* was that the defendant dragged the victim from the bedroom to the living room in the course of assaulting her. 338 Or at 471. In *Garcia*, the court quoted legislative history from an earlier draft of the statute, indicating that intent to interfere substantially concerned differentiation "between a situation where a person was removed from the place where he was found by the kidnapper to a place not within the immediate vicinity as opposed to a mere displacement incidental to another offense, such as removing a person to another room." 288 Or at 418 n 3 (quoting Minutes Criminal Law Revision Commission, Subcommittee No. 2, Oct 25, 1968); *see also id.* at 421 (relying on same legislative history in interpreting

---

[2] In that regard, the kidnapping of the first group of victims in this case was the functional equivalent of a circumstance in which a defendant robs one person in order to obtain the combination of a safe at another person's home.

term "substantially" in adopted version of the law); *Wolleat*, 338 Or at 476 (quoting same legislative history). As the court in *Wolleat* concluded as a matter of law, "[m]oving a victim from one room to another while committing another crime does not constitute moving the victim a substantial distance." 338 Or at 478. That was because the movement was "so minimal that a court can say, as a matter of law, that no reasonable juror could find that the defendant had the statutorily required intent." *Id.*

Here, as noted, the predicate movement of the first group of victims was not "so minimal." The movement of that group of victims was not "merely incidental" to the commission of crimes against those victims; rather, the interference with those victims' liberty was undertaken as the predicate to the commission of additional crimes against other persons inside the building. Thus, the trial court did not err in denying defendant's motion for judgments of acquittal on the kidnapping counts involving the Laroques and Welty.

■     Conversely, *Wolleat* compels a different disposition as to the kidnapping counts involving the remaining victims. As noted, Childs, Zaccone, and Groves were already inside the tavern when defendant and Jackson entered. Ordering them to put their hands on the bar and ordering Childs to get the money from the safe and the till were "merely incidental" to the robbery in light of the legislative history relied on by the court in *Wolleat*, given that the robbery was in progress at that point and the people inside the tavern were merely being ordered around the room to facilitate the robbery. *See Wolleat*, 338 Or at 477 (quoting Minutes Criminal Law Revision Commission, June 17, 1969, 20) (intent requirement would not be satisfied by evidence of "taking of a holdup victim from the front office to a back room against his will so that he might open a safe"). Accordingly, the trial court erred in denying defendant's motion for judgments of acquittal on the kidnapping counts involving Childs, Zaccone, and Groves.

Convictions on Counts 16, 17, and 21 for second-degree kidnapping reversed; sentences vacated; remanded for resentencing; otherwise affirmed.