Argued and submitted August 27, 2008, affirmed April 29, 2009

# STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

# JOAQUIN SIERRA,
*Defendant-Appellant.*

Marion County Circuit Court
05C40355; A136120

206 P3d 1153

David O. Ferry, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Legal Services Division, Office of Public Defense Services.

Paul L. Smith, Assistant Attorney General, argued the cause for respondent. On the brief were Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Anna M. Joyce, Assistant Attorney General.

Before Wollheim, Presiding Judge, and Ortega, Judge, and Carson, Senior Judge.

WOLLHEIM, P. J.

## WOLLHEIM, P. J.

Defendant appeals a judgment of conviction on one count of first-degree kidnapping, ORS 163.235, and two counts of second-degree kidnapping, ORS 163.225.[1] Defendant assigns error to the trial court's denial of his motion for judgment of acquittal on all three counts. We affirm.

### FACTS

We state the facts in the light most favorable to the state. *State v. Cervantes*, 319 Or 121, 125, 873 P2d 316 (1994). A manager at a convenience store received complaints that defendant was drinking alcohol in the restroom and making inappropriate sexual comments. The manager directed a store employee, Derrick, to inform defendant that he needed to leave the store.

When Derrick approached defendant, Derrick saw that defendant had a bottle of beer, and alcohol was not allowed in the restroom. Derrick accused defendant of making inappropriate sexual comments. Defendant believed that Derrick was being disrespectful to him and to his children. An oral confrontation ensued, ending when Derrick backed defendant out of the restroom and out of the store.

Defendant went to his truck and thought about the confrontation. After about five minutes, defendant decided to return to the store to force Derrick to apologize. Defendant grabbed a crossbow that he had in his truck, loaded it, and took a few extra bolts.[2] Defendant walked toward the store. At that time, Derrick and two coworkers were outside the store. Upon seeing defendant approach, the coworkers ran into the store and locked themselves in an office. Derrick remained outside.

Defendant confronted Derrick. Defendant told him that his accusation had insulted defendant and his children. Defendant demanded that Derrick apologize. When Derrick

---

[1] Defendant was also convicted of five counts of unlawful use of a weapon, ORS 166.220, and one count of fourth-degree assault, ORS 163.160. Those convictions are not at issue on this appeal.

[2] A bolt is "a shaft or missile designed to be shot from a crossbow or catapult[.]" *Webster's Third New Int'l Dictionary* 249 (unabridged ed 2002).

did not respond, defendant became angry. Defendant took Derrick's silence to mean that he was saying "f[uck] you" to defendant. Defendant later recalled: "That's when I asked him for the last time, I need an apology."

Derrick responded that he was not going to apologize to defendant. Defendant then grabbed Derrick, pointed the crossbow at his head, and pushed him back into the store. Defendant later explained that he pointed the crossbow at Derrick to scare him. Once inside the store, defendant forced Derrick to get down on his knees behind a checkout counter. Defendant paced back and forth behind Derrick, while pointing the crossbow in a downward direction toward him.

Defendant yelled at Derrick and was extremely angry at him. Defendant said "[h]e was going to hurt [Derrick] and hurt [Derrick's] children" and asked how Derrick would feel "if [defendant] hurt [Derrick's] daughter the way [Derrick] had hurt [defendant's] children." While Derrick was on his knees, defendant kicked him in the face.

At some point after defendant had taken Derrick behind the counter, two people, Jeter and Mintun, entered the store through different entrances from an adjacent fast-food restaurant. Jeter and Mintun were off-duty officers from a youth correctional facility, and Jeeter had had training and experience intervening in physical confrontations. Defendant told them to leave the store, but neither Jeter nor Mintun complied with defendant's order. Next, defendant pointed his crossbow at Jeter and Mintun and directed them to come around the cash register and up the ramp to the same area where Derrick was kneeling. Defendant ordered both to get down on their knees. Defendant explained, at trial, why he took action against Jeter and Mintun:

> "Well, you know, they—when I told them to leave (unin-telligible) kept on coming back and I—I didn't want them— I didn't want to hurt them or anything because that was not my intention, that's not my intention to hurt no—to hurt— to hurt anybody. That's—you know, that's not why I was there. And just to—because they don't want to leave just,

you know, stay away from the—from—*they were not inter-rupting but they were just, you know, there. I don't know, I— I told them to leave.*"

(Emphasis added.)

After defendant ordered Jeter and Mintun to their knees, defendant continued to pace back and forth and repeatedly pointed his crossbow at Derrick, Jeter, and Mintun. A short time later, deputy sheriffs arrived. The deputies ordered defendant to drop his weapon. Defendant refused and, when defendant started to raise the crossbow, the officers shot him.

## MOTIONS FOR JUDGMENTS OF ACQUITTAL

At trial, defendant moved for a judgment of acquittal on all three kidnapping charges. To support his motion regarding the first-degree kidnapping charge involving Derrick, defendant argued that the state failed to establish that defendant subjectively intended to terrorize Derrick. To support his motion regarding the second-degree kidnapping charges involving Jeter and Mintun, defendant argued that (1) he lacked the requisite intent; (2) he did not move either victim a substantial distance; and (3) his actions toward them were merely incidental to his assault on Derrick. The trial court denied defendant's motions. The jury convicted him on all those charges.

On appeal, defendant assigns error to the trial court's denial of his motions for judgments of acquittal and renews the arguments he made at trial. We review to determine whether, viewing all the evidence in the light most favorable to the state, a rational trier of fact could have found that the state proved the essential elements of the crime beyond a reasonable doubt. *Cervantes*, 319 Or at 125. Further, we accept any "reasonable inferences and reasonable credibility choices that the jury could have made." *State v. Walters*, 311 Or 80, 82, 804 P2d 1164, *cert den*, 501 US 1209 (1991).

## KIDNAPPING IN THE FIRST DEGREE

We first address the trial court's denial of defendant's motion for judgment of acquittal on the charge of kidnapping in the first degree. Kidnapping in the first degree

is an aggravated form of kidnapping in the second degree. ORS 163.225; ORS 163.235.[3] In this case, defendant was charged with the specific aggravating factor of having the purpose "[t]o terrorize the victim or another person." ORS 163.235(1)(d).

Defendant concedes that the evidence is sufficient to support a conviction for kidnapping in the second degree as to Derrick, but he argues that the evidence is insufficient to prove his intent to terrorize Derrick. The state argues that the evidence was sufficient to create a question for the trier of fact as to whether defendant kidnapped Derrick with the purpose to terrorize. We agree with the state.

■ This court has defined the aggravating factor "to terrorize" consistently with the definition provided by the Oregon Criminal Law Commission:

> " 'Terrorize' is defined by *Webster's* as meaning 'to fill with terror; to coerce, maintain power, etc. by inducing terror.' The dictionary defines terror as meaning 'intense fear * * * the quality of causing dread; terribleness.' *Webster's New World Dictionary* (Coll ed 1968). The verb form of the word seems particularly apt for use in a kidnapping statute; and the American Law Institute indicates that the term was employed in the Model Penal Code to cover 'vengeful or sadistic abductions accompanied by threats of torture, death or other severely frightening experience.' [Commentary, Tent. Draft no. 11 at 18 (1960).]"

*State v. Swaggerty*, 15 Or App 343, 348, 515 P2d 952 (1973) (*quoting* Commentary to Criminal Law Commission Proposed Oregon Criminal Code, Final Draft and Report, § 99 (1970) (internal quotation marks omitted; brackets in original)). Under that definition, a person does not have the purpose to terrorize if the person seeks to cause just *any*

---

[3] ORS 163.235 provides, in part, that

"(1) A person commits the crime of kidnapping in the first degree if the person violates ORS 163.225 [kidnapping in the second degree] with any of the following purposes:

"(a) To compel any person to pay or deliver money or property as ransom;

"(b) To hold the victim as a shield or hostage;

"(c) To cause physical injury to the victim; or

"(d) To terrorize the victim or another person."

amount of fear. A person has the purpose to terrorize only if the person seeks to cause an *intense* level of fear or a *severely* frightening experience by engaging in vengeful abduction.[4]

That degree of intensity distinguishes first-degree from second-degree kidnapping. A person commits second-degree kidnapping if the person acts "without consent." ORS 163.225. A kidnapping is committed "without consent" if "the taking * * * is accomplished by force, threat or deception." ORS 163.215(1). Because that use of force, threat, or deception will ordinarily cause some level of fear and create a frightening experience, the aggravating factor of having the purpose to terrorize requires "evidence of a purpose to do more than that which is necessary to take or confine by force, threat or deception." *State v. Nulph*, 31 Or App 1155, 1165, 572 P2d 642 (1977), *rev den*, 282 Or 189 (1978); *see* ORS 174.010 (providing that a court should interpret statutes, whenever possible, to give effect to all statutory provisions).

Accordingly, a person has the requisite purpose to terrorize only if the person acts with an "intense, vengeful or sadistic level of intent" to cause more fear than that level of fear ordinarily aroused during the commission of second-degree kidnapping. *Swaggerty*, 15 Or App at 349. It is because that purpose to terrorize places the victim under increased risk of harm that the statutory scheme prescribes enhanced penalties for first-degree kidnapping over second-degree kidnapping.[5] *State v. Strickland*, 36 Or App 119, 125, 584 P2d 310 (1978) (relying on the Commentary to Criminal Law Commission Proposed Oregon Criminal Code § 99 (1970)).

This court concluded in *State v. Bodenschatz*, 62 Or App 606, 611, 662 P2d 1, *rev den*, 295 Or 446 (1983), that a sufficient level of increased fear existed to support a jury's verdict that the defendant had a purpose to terrorize. In that case, the defendant and his brother were hitchhiking. After

---

[4] Whether the victim actually experiences any heightened level of fear is irrelevant to the inquiry. *Swaggerty*, 15 Or App at 347 n 1. The focus of the inquiry is whether a defendant *intends* to instill that heightened level of fear in a victim's mind. *Id.*

[5] Second-degree kidnapping is a Class B felony, ORS 163.225(3); first-degree kidnapping is a Class A felony, ORS 163.235(2).

they were picked up, the brothers ordered the driver at gunpoint to take them to the Oregon Coast. Repeatedly, throughout the drive, the brothers threatened to shoot the driver if he did anything to attract the attention of the police. To back up those threats, the brothers brandished a gun on several occasions. To test the driver's compliance, the brothers ordered him to stop at a convenience store near two marked police cars. *Id.* at 608-09. Under those circumstances, this court determined that the jury could reasonably find that the kidnapping was "particularly vengeful and sadistic and that it was accompanied by taunting threats of death or other severely frightening experience." *Id.* at 611.

Here, the evidence is sufficient to support a rational finding that defendant acted with the intent to create a similar level of fear as found in *Bodenschatz*. The evidence establishes that defendant was yelling at Derrick, was extremely angry at him, and had felt hurt as a result of their earlier encounter in the store's restroom. Defendant intended to make Derrick apologize. Defendant stated that his intent was to scare Derrick. This evidence allows the reasonable inference that defendant acted out of vengeance with the purpose to instill fear in Derrick's mind. The jury could also infer that defendant's act of repeatedly pointing the crossbow at Derrick communicated a taunting threat of death or other serious injury. In addition, a jury could interpret defendant's threat to harm Derrick's daughter as evidence of intent to elevate the level of fear Derrick experienced. Thus, the jury could conclude that defendant intended to create a severely frightening experience. In sum, the jury's conclusion that defendant had the purpose to terrorize Derrick was rational and supported by the evidence.

Nonetheless, defendant argues that a rational jury could not infer that defendant acted with the purpose to create a level of fear any greater than that evidenced in *Swaggerty* or *Nulph*. In *Swaggerty*, the defendant kidnapped a woman at knife point and threatened to kill her in order to rape her. 15 Or App at 345. This court concluded that the defendant's conduct "would appear to make out sufficient force to be elements of first degree rape[,] * * * but the facts are not sufficiently aggravated *as aspects of the crime of kidnapping*" to constitute first-degree kidnapping. *Id.* at 348-49

(emphasis added; footnote omitted). In *Nulph*, the defendant kidnapped and murdered the victim. However, this court concluded that because "murder can be accomplished by surprise or otherwise without terror," the evidence was insufficient to establish the defendant's intent to subject the victim during the period of the abduction to any "more force than was necessary to accomplish the kidnapping." *Nulph*, 31 Or App at 1165.

The facts of this case are distinguishable from both *Swaggerty* and *Nulph*. In each of those cases, the defendant kidnapped someone in order to commit an additional crime. In those cases, this court appeared to segregate the level of fear intended during the kidnapping from the level of fear actually produced by the additional crime.[6] By contrast, the evidence here supports a finding that defendant did not kidnap with the separate purpose to assault Derrick or to commit a separate crime against Derrick. Rather, the evidence suggests that defendant had one purpose for all his conduct toward Derrick—including the kidnapping, the assault, and the use of the crossbow. That sole purpose was to scare Derrick in order to extract an apology. Where the jury could have inferred that that purpose was accompanied by a taunting threat of death, the evidence was sufficient for the jury to rationally find that defendant had the purpose to terrorize Derrick. Accordingly, we affirm as to that conviction.

### KIDNAPPING IN THE SECOND DEGREE

■ We next address the trial court's denial of defendant's motions for judgment of acquittal on the two counts of kidnapping Jeter and Mintun in the second degree. ORS 163.225 provides, in part:

"(1) A person commits the crime of kidnapping in the second degree if, with intent to interfere substantially with

---

[6] We question whether this court's segregation of the defendants' conduct during the commission of the rape or murder was proper in Swaggerty or *Nulph*. After we decided *Swaggerty* and *Nulph*, we held that the purpose to rape is the same as the purpose to cause physical injury. *Strickland*, 36 Or App at 124. The purpose to cause physical injury is an aggravating factor pursuant to ORS 163.235(1)(c) that elevates kidnapping in the second degree to a first-degree offense. Thus, in *Strickland*, we did not segregate the purpose to rape from the purpose to kidnap. We need not resolve the apparent inconsistency between those cases to decide this case.

another's personal liberty, and without consent or legal authority, the person:

"(a) Takes the [other] person from one place to another[.]"

Accordingly, the state had to prove three elements as to each victim: (1) that defendant intended "to interfere substantially with [the victim's] personal liberty" (the intent element); (2) that defendant "took the victim from one place to another" (the asportation element); and (3) that defendant did so "without consent." *State v. Wolleat*, 338 Or 469, 471, 111 P3d 1131 (2005). Because defendant does not dispute that he acted without consent, we turn to the first two elements.

■  The intent element and the asportation element are distinct but closely related. *State v. Zweigart*, 344 Or 619, 636, 188 P3d 242 (2008). The intent element seeks to safeguard "personal liberty." The Supreme Court has determined that the "personal liberty" protected by ORS 163.225(1) does not refer to a broad range of liberty interests; rather, it refers to a person's liberty to move freely. *Wolleat*, 338 Or at 474.

■ ■  The asportation element also serves to safeguard a person's liberty to move freely. However, the asportation element requires actual movement—the taking of a victim "from one place to another," *State v. Walch*, 218 Or App 86, 90, 178 P3d 301, *rev allowed*, 344 Or 558 (2008), whereas the intent element can be met without actual movement. A victim is moved "from one place to another" only if that victim is moved a "substantial" distance. *State v. Murray*, 340 Or 599, 606-07, 136 P3d 10 (2006) (citing *State v. Garcia*, 288 Or 413, 421, 605 P2d 671 (1979)).

■ ■  Proof that a defendant had *actually moved* a victim a substantial distance may allow a reasonable factfinder to infer that the defendant had the *intent* to interfere substantially with a victim's liberty to move freely. *Zweigart*, 344 Or at 636. However, "minimal movement that amounts to incidental conduct that might accompany some other crime is, standing alone, insufficient proof of intent to support a conviction." *Id*. Consequently, because the asportation element requires proof of movement of a substantial distance, a reasonable factfinder may generally infer intent from proof of

asportation except where the actual movement is incidental conduct to some other crime.[7] Accordingly, our analysis proceeds as follows: first, we consider whether the victims were actually moved from one place to another; second, we consider whether that movement was incidental conduct to some other crime; and, third, we consider whether a rational jury could infer intent under the facts of this case.

Evidence as to asportation must show that a defendant moved a victim "from one place to another" and that that distance was "substantial." *Murray*, 340 Or at 606. However, movement from "one place to another" is not predicated upon movement that exceeds a precise minimum distance. *State v. Odnorozhenko*, 224 Or App 288, 293-94, 197 P3d 562 (2008). Rather, movement of a substantial distance depends upon whether the "place" at which a victim is found can be distinguished from the "place" to which a victim is taken. *Murray*, 340 Or at 606. That determination is "situational and contextual" and is "a function of the object to be moved, as well as a function of the area in which the movement occurs." *Id*.

For example, moving a person from a driveway ("a place where one might park a car, carry on a conversation, or from which one might walk away") to the trunk of a car ("a place in which a human being could be put for almost no innocent purpose") constitutes movement from one place to another even though those places may "happen to be located a few feet from each other." *Walch*, 218 Or App at 92. By contrast, moving a person from the driver's seat into the front passenger seat of a car during the commission of a carjacking does not constitute movement from one place to another. *Murray*, 340 Or at 606. Neither does dragging a person a few feet in a small area between two parked cars inside a parking

---

[7] By contrast, evidence that a defendant did not move a victim a substantial distance is not determinative of a lack of intent, because the intent to interfere substantially in another person's liberty can be established through other evidence. *State v. Nguyen*, 221 Or App 440, 447, 190 P3d 462 (2008) (intent established by evidence that the defendant surprised the victim in her home, brandished a gun, bound and gagged her, and caused the victim to fear physical harm if she attempted to move or escape). If the evidence is sufficient to support a finding of intent but insufficient to support a finding of asportation, that evidence along with certain additional findings may support a conviction for attempted kidnapping. *State v. Odnorozhenko*, 224 Or App 288, 295, 197 P3d 562 (2008).

structure constitute movement from one place to another. *Odnorozhenko*, 224 Or App at 294.

Here, defendant moved Jeter and Mintun only a few feet within the store by directing them around a counter, up a ramp, and behind a cash register. Nonetheless, the places where Jeter and Mintun were initially located were different from the place to which defendant moved them. The places where Jeter and Mintun began were places where defendant lacked control over their liberty to move freely. At those places, although defendant directed Jeter and Mintun to leave, they chose to stay. By contrast, the place where Jeter and Mintun were taken was a place where defendant exercised control over them.

That change in control distinguishes the starting places where Jeter and Mintun began from the ending place where defendant had taken them. That change in control illustrates the situational and contextual differences between their starting places and their ending place—as a function both of the area in which the movement occurred and of the persons whom defendant moved. Because those starting places and that ending place are different situationally and contextually, defendant took Jeter and Mintun from one place to another.

Nonetheless, defendant cites *State v. Douglas*, 203 Or App 22, 125 P3d 751 (2005), *rev den*, 340 Or 157 (2006), for the proposition that movement of victims within the same room is insufficient to establish the asportation element. Defendant's reliance on *Douglas* is misplaced. In *Douglas*, the defendant argued that the actual movement of the victims was merely incidental to the crime of robbery. *Id.* at 25. Accordingly, this court did not consider whether the defendant's actual movement of those victims in *Douglas* was sufficient to show that the victims were moved from one place to another. *Id.* at 28-29. Thus, *Douglas* is inapplicable to our analysis of asportation here.

Next, we consider whether defendant's asportation of Jeter and Mintun was incidental to his assault on Derrick. Asportation is incidental to another crime if that asportation consists of minimal movement that "might accompany some

other crime." *Zweigart*, 344 Or at 636. Thus, the forcible taking of a victim from one room to another so that the victim could open a safe is asportation that is incidental to the crime of robbery. *Wolleat*, 338 Or at 477. However, asportation is only incidental to the commission of an ongoing crime if the asportation *facilitates* the completion of that crime. *See Douglas*, 203 Or App at 28-29 (distinguishing incidental asportation that facilitates the completion of another crime from nonincidental conduct that is an essential predicate to the completion of another crime); *see also State v. Reyes-Mauro*, 217 Or App 315, 329, 175 P3d 998 (2007), *rev den*, 345 Or 159 (2008) (concluding asportation was incidental to an ongoing robbery).

Here, defendant argues that his conduct toward Jeter and Mintun was only incidental to his assault and kidnapping of Derrick. Defendant's argument is unpersuasive for two reasons. First, defendant's conduct toward Jeter and Mintun is not incidental to the crimes of kidnapping, assault, and unlawful use of a weapon against Derrick, because those crimes against Derrick were already completed before defendant commenced his kidnapping of Jeter and Mintun. Thus, defendant's conduct toward Jeter and Mintun did not *facilitate* his crimes against Derrick. Because that conduct did not facilitate another crime, defendant's conduct toward Jeter and Mintun was not incidental to another crime.

Second, the evidence at trial is sufficient to create a question for the trier of fact as to whether defendant's motivation in acting against Jeter and Mintun was to facilitate his actions against Derrick or whether defendant's motivation arose out of his separate frustrations with Jeter and Mintun. Specifically, defendant testified that he acted against Jeter and Mintun "because they don't want to leave * * * they were not interrupting but they were just, you know, there. I don't know, I—I told them to leave." That statement supports a rational inference that defendant did not believe that Jeter and Mintun were interrupting his criminal conduct against Derrick. That statement also supports a rational inference that defendant had become frustrated with Jeter and Mintun for their decision not to comply with his orders to leave the store and retaliated against them

for their refusal to comply with his orders. For those reasons, the evidence supports the jury finding that defendant's conduct against Jeter and Mintun was not incidental to defendant's criminal conduct against Derrick.

As previously noted, where sufficient evidence supports a finding that a defendant actually moved a victim a substantial distance and that that movement was not incidental to the commission of another crime, a reasonable factfinder may infer intent to interfere substantially with the victim's personal liberty. However, whether such an inference is proper depends on the facts. For example, if a person drives a car a substantial distance while unaware that another person was in the back seat of the car, the driver would not have the intent to interfere with that passenger's liberty. No such circumstances exist in this case. Rather, the facts provide additional confirmation as to defendant's intent. The evidence at trial was that defendant placed Jeter and Mintun in the same place and treated them in the same manner as he treated Derrick. Where defendant concedes that the evidence was sufficient to find that he had formed the intent to kidnap Derrick, that similar treatment would allow a rational factfinder to infer that defendant had also formed the intent to interfere with Jeter's and Mintun's liberty.

## CONCLUSION

In sum, we affirm each of defendant's convictions. Because the evidence supports a finding by a rational factfinder that defendant intended to terrorize Derrick, we affirm defendant's conviction on the count of first-degree kidnapping. In addition, the evidence is sufficient for a rational factfinder to find that defendant moved Jeter and Mintun from one place to another, to determine that that movement was not incidental to defendant's commission of another crime, and to infer that defendant had the intent to interfere substantially with Jeter's and Mintun's personal liberty. Accordingly, we affirm defendant's conviction on the two counts of second-degree kidnapping.

Affirmed.