Argued and submitted September 14, 2004, Court of Appeals decision and
judgment of circuit court reversed in part May 5, 2005

STATE OF OREGON,
*Respondent on Review,*

*v.*

RICHARD JAMES WOLLEAT,
*Petitioner on Review.*

(CC 01C42188; CA A116196; SC S50919)

111 P3d 1131

Monica L. Finch, Deputy Public Defender, Salem, argued the cause and filed the briefs for petitioner on review. With her on the briefs were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Office of Public Defense Services.

Stacey RJ Guise, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

KISTLER, J.

## KISTLER, J.

The question in this case is whether evidence that defendant dragged the victim from one room to another during the course of an assault was sufficient to permit a reasonable juror to find that defendant had kidnapped the victim. The trial court denied defendant's motion for a judgment of acquittal on the kidnapping charge, the jury found him guilty of kidnapping, and the Court of Appeals affirmed without opinion. *State v. Wolleat*, 189 Or App 336, 75 P3d 921 (2003). We allowed defendant's petition for review and now reverse.

In reviewing defendant's motion for a judgment of acquittal, we state the facts in the light most favorable to the state. *State v. King*, 307 Or 332, 339, 768 P2d 391 (1989). Defendant and the victim lived together and were engaged to be married. After spending the evening out drinking with friends, defendant returned home shortly after midnight. He went into the bedroom where the victim was sleeping, grabbed her by her hair, and pulled her out of bed. Still holding the victim by her hair, defendant dragged her approximately 15 to 20 feet from the bedroom into the living room, where he repeatedly struck her. The victim broke away from defendant and fled from the house.

The state charged defendant with fourth-degree assault and first-degree kidnapping. At the close of the state's case-in-chief, defendant moved for a judgment of acquittal on the kidnapping charge. To establish that defendant had committed first-degree kidnapping, as alleged in the indictment, the state had to prove that defendant (1) took the victim from one place to another; (2) with the intent to interfere substantially with her personal liberty; (3) without consent or legal authority; and (4) with the purpose of physically injuring her. ORS 163.225; ORS 163.235.[1]

---

[1] ORS 163.235 defines the offense of first-degree kidnapping. It provides, in part:

"(1) A person commits the crime of kidnapping in the first degree if the person violates ORS 163.225 [the statute defining second-degree kidnapping] with any of the following purposes:

"(a) To compel any person to pay or deliver money or property as ransom; or

"(b) To hold the victim as a shield or hostage; or

In moving for a judgment of acquittal, defendant did not dispute that a reasonable juror could find that he took the victim from one place to another. Rather, relying on *State v. Garcia*, 288 Or 413, 605 P2d 671 (1980), defendant argued that no reasonable juror could find that he had intended to interfere substantially with the victim's personal liberty.

The trial court denied defendant's motion, and the jury convicted him of assault and kidnapping. The Court of Appeals affirmed both convictions. Defendant petitioned for review, contending that there was insufficient evidence to submit the kidnapping charge to the jury.[2] We allowed defendant's petition for review to consider a recurring question: When will the movement of a person from one place to another during the commission of another crime, such as rape or assault, be sufficient to establish the crime of kidnapping?

In answering that question, both parties focus on the statutory phrase "with intent to interfere substantially with another's personal liberty." Relying on *Garcia*, defendant contends that the phrase reflects a legislative judgment that a brief movement or temporary detention that is incidental to the commission of another crime is insufficient, as a matter of law, to establish an intent to interfere substantially with the victim's personal liberty. Focusing on a footnote in *Garcia*, the state responds that a reasonable juror can infer an intent to interfere substantially from movement or detention whenever the movement or detention is not "ordinarily inherent" in the commission of another crime.

---

"(c) To cause physical injury to the victim; or

"(d) To terrorize the victim or another person."

ORS 163.225, in turn, provides, in part:

"(1) A person commits the crime of kidnapping in the second degree if, with intent to interfere substantially with another's personal liberty, and without consent or legal authority, the person:

"(a) Takes the person from one place to another; or

"(b) Secretly confines the person in a place where the person is not likely to be found."

[2] Defendant has not challenged his conviction for assault either in this court or the Court of Appeals, and that conviction is not before us.

■   The parties' dispute turns initially on a question of statutory interpretation, and we begin, as usual, with the text and context of the statutes. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993) (stating statutory construction methodology). The relevant portion of the kidnapping statutes provides that "[a] person commits the crime of kidnapping * * * if, with intent to interfere substantially with [the victim's] personal liberty, * * * the person * * * [t]akes the [victim] from one place to another." ORS 163.225(1).

As defined, the offense has two elements—a physical act and a mental state. The phrase "[t]akes the [victim] from one place to another" defines the act necessary to establish the crime of second-degree kidnapping.[3] By its terms, the phrase does not require that a defendant take a victim a specific distance, nor does it require that the distance be substantial. Rather, the text states that moving a victim "from one place to another" will be sufficient to establish the element of asportation. Although the question of how far a defendant must move a victim to satisfy that element can present a close question, defendant has not contended that the movement in this case was insufficient, as a matter of law, to prove asportation. Accordingly, we do not address that issue further and turn to the mental element of the offense.

The phrase "intent to interfere substantially with [the victim's] personal liberty" defines the mental state that must accompany the act of moving the victim. One proposition is clear from the text of that phrase. In moving a victim from "one place to another," a defendant need not in fact interfere substantially with the victim's personal liberty in order to complete the crime of second-degree kidnapping: The *intent* to interfere substantially is sufficient. Beyond that, the meaning of the phrase is less certain. How much interference, if accomplished, would be "substantial," and what interests does the phrase "personal liberty" protect from the intended interference? "[S]ubstantially" is not an exact term,

---

[3] Alternatively, a defendant may commit second-degree kidnapping by "[s]ecretly confin[ing]" the person in a place where the person is not likely to be found." ORS 163.225(1)(b). In this case, the state charged defendant under ORS 163.225(1)(a) with taking the victim from one place to another, and we limit our discussion accordingly.

and the text of the kidnapping statutes provides no guidance on the extent of its reach. The phrase "personal liberty" also poses an interpretative issue. Viewed in the abstract, the words could include a broad range of liberty interests. Alternatively, the words could refer more narrowly to a person's right to be free from undesired restrictions on his or her movement.

Two sources bear on the meaning of "substantially" and "personal liberty." First, the kidnapping statutes are directed at restrictions on a person's freedom of movement. ORS 163.225 prohibits one person from taking another person from one place to another or secretly confining that person. That wording suggests that, when the legislature prohibited performing either of those acts with the intent to interfere substantially with another's "personal liberty," it did not use the term "liberty" in its broad sense. Rather, the legislature intended to refer more narrowly to interfering with a person's liberty to move freely.

This court's decision in *Garcia* also provides guidance. *See State v. Snyder*, 337 Or 410, 417, 97 P3d 1181 (2004) (considering prior statutory interpretation at first level of analysis). In *Garcia*, the defendant held a knife to the victim's throat and forced her to cross a street, walk two blocks, cross another street, and then go behind a house where the defendant raped and sodomized her. 288 Or at 415. In determining whether the jury could find the defendant guilty of kidnapping in addition to rape and sodomy, the court looked to the legislative history of the kidnapping statutes and drew three conclusions from that history. *Id.* at 416-20.

The court concluded initially that the legislature "intended that there be no conviction of the defendant for the separate crime of kidnapping where the detention or asportation of the victim is merely incidental to the accomplishment of another crime." *Id.* at 420. The court concluded additionally, and conversely, that the "legislature perceived no reason not to prosecute and punish a malefactor for the separate crime of kidnapping where the detention *or* asportation is *not merely incidental* to the commission of the underlying

crime." *Id.* (emphases in original). Finally, the court explained:

> "The drafting technique utilized to accomplish the legislative purpose is manifested in the definition of the crime of kidnapping. The [Oregon Criminal Law Revision] Commission reasoned that even though the malefactor's conduct offended the statutory injunctions against rape or robbery, he would be guilty of kidnapping also if in committing rape or robbery he took the victim a 'substantial distance' or held the victim 'a substantial period of time.' As finally enacted the law does not even require that there actually be a substantial interference with the victim's personal liberty; it is only necessary that the perpetrator have the '*intent* to interfere substantially' with the victim's personal liberty to make the malefactor guilty of kidnapping if he commits an act proscribed by ORS 163.225. We find nothing in legislative history to indicate the legislature intended by its adverb 'substantially' anything other than was intended by the Commission in its use of the adjective 'substantial.' "

*Id.* at 420-21 (emphasis in original; citation and footnote omitted).

■  The decision in *Garcia* removes some of the ambiguity from the phrase "intent to interfere substantially with another's personal liberty." It confirms that the liberty interest that the statute protects from interference is the interest in freedom of movement and concludes that, in order for the interference to be substantial, a defendant must intend either to move the victim a "substantial distance" or to confine the victim for a "substantial period of time." The decision, however, does not provide any guidance on the minimum distance that a defendant must intend to move a victim or the minimum amount of time that a defendant must intend to confine a victim before the intended movement or confinement will constitute substantial interference. The defendant in *Garcia* had failed to move for a judgment of acquittal on the kidnapping charge, and the court held only that, in light of the defendant's unpreserved objection, it could not say that the trial court had erred in sending the kidnapping charge to the jury. *Id.* at 421-22.

■  Because the text and context of ORS 163.225(1) do not clarify the legislature's understanding of the minimum

distance that will be "substantial," we turn, as the court did in *Garcia*, to the legislative history. *See PGE*, 317 Or at 611-12 (explaining when courts may look to legislative history). In doing so, we limit our examination of the legislative history to the issue that *Garcia* left open and on which this case turns—whether there is some minimum distance that a defendant must intend to move the victim before a reasonable juror can say that the defendant intended to interfere substantially with the victim's personal liberty.

Three portions of the legislative history provide guidance on that issue. First, in explaining the phrase "substantial distance" in the first preliminary draft of the kidnapping statutes, the research counsel told a subcommittee of the Criminal Law Revision Commission[4] that the phrase

> "was intended to differentiate between a situation where a person was removed from the place where he was found by the kidnaper to a place not within the immediate vicinity as opposed to a mere displacement incidental to another offense, such as removing a person to another room."

Minutes, Criminal Law Revision Commission, Subcommittee No 2, Oct 25, 1968, 3.[5]

Second, the commentary to the first preliminary draft of the kidnapping statutes notes that some courts had held that "almost any movement of the victim" will satisfy the requirement that the defendant take or carry the victim away. Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Preliminary Draft No 1, Art 12, §§ 2, 3 (Oct 1968). Specifically, the commentary notes that the California Supreme Court had held that "a defendant who dragged a rape victim from one room to another" had

---

[4] The 1967 legislature created the Oregon Criminal Law Revision Commission to revise the state's criminal laws. *Garcia*, 288 Or at 416. The Commission divided responsibility for drafting the revised criminal code among three subcommittees. Those subcommittees produced drafts of the code and submitted those drafts, together with commentaries on them, to the Commission, which produced a final draft of the proposed code and presented the final draft and commentary to the legislature.

[5] Although the research counsel for the Commission was commenting on the phrase "substantial distance" in the first preliminary draft, the court found that her comments on that phrase informed the meaning of the phrase "interfere substantially" in ORS 163.225(1). *Garcia*, 288 Or at 421.

committed the separate crime of kidnapping. *Id.* That holding was problematic, the commentary explains, because "the same harsh penalties [for kidnapping] may now be imposed for conduct of little seriousness as for the most heinous forms of behavior." *Id.*[6]

Finally, when the Criminal Law Revision Commission considered the fourth preliminary draft of the kidnapping statutes, then-Attorney General Lee Johnson questioned using the phrase "intent to interfere substantially with another's personal liberty" as part of the definition of second-degree kidnapping.[7] Minutes, Criminal Law Revision Commission, June 17, 1969, 20. Johnson stated that "he had not resolved in his own mind the necessity of having the two elements—the 'intent to interfere substantially with another's personal liberty' and 'without consent' " and asked whether the first element, the intent to interfere substantially, could be omitted. *Id.*

The director of the Commission responded that he did not think that that element could be omitted and explained that the fourth draft had included that element

> "to distinguish kidnapping from incidental conduct that might accompany some other crime. He cited as an example the taking of a holdup victim from the front office to a back room against his will so that he might open a safe. If the reference to personal liberty were deleted from [the section defining second-degree kidnapping], he felt there would be a potential of a kidnapping charge where kidnapping is not really the crime."

*Id.* Johnson found the director's explanation persuasive, and the Commission adopted the fourth draft of the kidnapping statutes, which it submitted to the legislature as part of the

---

[6] Although the commentary to later versions of the draft omitted this example, the commentary continued to state that the serious penalties associated with kidnapping should not apply to brief detentions that are incidental to the commission of another crime. Commentary to the Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report §§ 98, 99 (July 1970).

[7] The first three preliminary drafts had not used the phrase "intent to interfere substantially with another's personal liberty" as part of the definition of second-degree kidnapping. *See, e.g.,* Criminal Law Revision Commission Proposed Oregon Criminal Code, Preliminary Draft No 3, Art 12, §§ 1, 2 (Feb 1969) (defining second-degree kidnapping differently).

proposed criminal code. The legislature adopted the proposed kidnapping statutes without further comment.

One proposition emerges clearly from the legislative history. Moving a victim from one room to another while committing another crime does not constitute moving the victim a substantial distance. Put differently, that movement is not sufficient, by itself, to give rise to an intent to interfere substantially with the victim's liberty to move freely. *See Garcia*, 288 Or at 421 (explaining that concept of "substantial distance" informs meaning of "intent to interfere substantially"). With that background in mind, we turn to the facts of this case.

■ The evidence, viewed in the light most favorable to the state, shows that defendant moved the victim from the bedroom to the living room, approximately 15 to 20 feet, while he assaulted her. A reasonable juror could infer from that evidence that defendant intended to move the victim the distance that he did. However, an intent to do only that would be insufficient to establish the mental element necessary to prove kidnapping—a point that the legislative history makes clear. In order to find defendant guilty of kidnapping, a reasonable juror would have to be able to infer that defendant intended either to move the victim a greater distance than he did or to transport her to a place of confinement. As our recitation of the facts makes clear, no reasonable juror could draw that inference from this record.

We recognize, as the court did in *Garcia*, that in most cases the question whether the defendant intended to interfere substantially with the victim's liberty will present a question of fact for the jury. *Id.* In some cases, however, the intended movement will be so minimal that a court can say, as a matter of law, that no reasonable juror could find that the defendant had the statutorily required intent. This is one of those cases, as the examples in the legislative history make clear.

The state advances primarily one argument in response. Relying on a footnote in *Garcia*, the state contends that, because the act of moving the victim from one room to another is not "ordinarily inherent" in the crime of assault,

the jury could find that defendant intended to interfere substantially with the victim's personal liberty.[8] The state reads too much into that footnote. The court in *Garcia* appended that footnote to its conclusion, in the text, that the question whether a defendant substantially interferes with a victim's personal liberty turns on whether the defendant moves the victim a substantial distance or confines the victim for a substantial period of time. *Id.* at 421, 421 n 8. The footnote observes that the text of the phrase "interfere substantially with another's personal liberty" could be read, in the abstract, more broadly but explains that it is "readily apparent" that the drafters of the kidnapping statutes were not attempting to protect people from conduct that is ordinarily inherent in the crimes of rape and sodomy. Rather, they were attempting to protect them from interference with their right to move freely—a proposition that the text of the opinion makes clear.

On this record, defendant was entitled to a judgment of acquittal on the kidnapping charge. We accordingly reverse the Court of Appeals decision to the extent that it affirmed defendant's conviction for kidnapping.

The decision of the Court of Appeals and the judgment of the circuit court are reversed in part.

---

[8] The footnote on which the state relies observes:

"In the abstract we find it somewhat difficult to envision forcible rape or sodomy which does not entail 'substantial' interference with the personal liberty of the victim; however, it is readily apparent that the drafters of this legislation were attempting to describe conduct of the malefactor *not ordinarily inherent* in the sexual misconduct itself."

*Garcia*, 288 Or at 421 n 8 (emphasis in original).