Argued and submitted January 4, 2007, in case number 02-1010, judgments of conviction for aggravated murder on count 3 and kidnapping in the second degree on count 10 reversed; judgments of conviction for aggravated murder on counts 1 and 2 and sentences of death affirmed; sentence on count 9 on defendant's conviction for robbery in the first degree vacated; all other convictions and sentences affirmed; case number 02-1010 remanded to circuit court for further proceedings; case number 03-1113 affirmed June 26, 2008

STATE OF OREGON,
*Respondent,*

*v.*

ALLEN GARY ZWEIGART, SR.,
*Appellant.*

(CC 02-1010, 03-1113;
SC S052150 (control), S052673)

188 P3d 242

Robin Adair Jones, Senior Deputy Public Defender, Salem, argued the cause and filed the briefs for appellant. With her on the briefs were Peter Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Office of Public Defense Services.

Joanna Jenkins, Assistant Attorney General, Salem, argued the cause for respondent. Kathleen Cegla, Assistant Attorney General, Salem, filed the briefs for respondent. With her on the briefs were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

GILLETTE, J.

Walters, J., dissented and filed an opinion, in which Durham, J., joined.

## GILLETTE, J.

This case is before this court on automatic and direct review of defendant's conviction and sentence of death for three counts of aggravated murder. *See* ORS 138.012 (providing for direct review in the Supreme Court when jury imposes a death sentence). The same jury also convicted defendant of multiple charges of murder, conspiracy, solicitation, robbery, and kidnapping. Defendant seeks reversal of his convictions on the three counts of aggravated murder and on various other counts including, as relevant here, his conviction based on allegations that he kidnapped the victim. Defendant also challenges his sentence of death as well as the trial court's imposition of consecutive sentences on several of his felony convictions on the ground that the facts that the trial court found to justify such sentences had not been proved to the jury beyond a reasonable doubt. For the reasons that follow, we reverse one of the aggravated murder convictions and defendant's conviction on a charge of second-degree kidnapping. We affirm the other convictions and sentences of death. In addition, because we agree with defendant that the trial court erred in imposing a consecutive sentence on a conviction for robbery based on the trial court's own fact-finding, rather than on facts proved to the jury beyond a reasonable doubt, we reverse that consecutive sentence. We remand the case to the trial court for further proceedings.

■ Defendant was charged with, and the jury found him guilty of, killing his wife, Hong Ha Zweigart. We therefore state the facts in the light most favorable to the state. *See State v. Gibson*, 338 Or 560, 562, 113 P3d 423, *cert den,* 546 US 1044, 126 S Ct 760, 163 L Ed 2d 591 (2005) (illustrating that approach).

Defendant met and married the victim during his military service in Viet Nam. The couple had three daughters and one son, who are now adults. Defendant worked at the St. Helens Safeway, where two of his adult children also had been employed. While working there, defendant began having an extramarital affair with a coworker, Maria Tinajero. He asked Tinajero to help him find someone to kill his wife and Tinajero eventually engaged her nephew, Nicholas Fortier, for that task. Over the next few months, defendant

relayed information to Fortier through Tinajero, instructing Fortier to stage a burglary at defendant's home and, in the process, kill his wife. Defendant placed guns in his garage and left the garage door partially open to provide Fortier access both to the guns and to the home. Twice, Fortier entered the garage and retrieved a gun, but then left without following through on the plan.

On January 10, 2002, after defendant had exerted additional pressure on Tinajero, Fortier, carrying a gun wrapped in a towel, made his way into defendant's and the victim's home. Once inside, he found his way to the couple's bedroom. There, Fortier pretended to be an intruder, bent on robbery. Defendant told Fortier that he had guns and money, and began pulling guns from a closet. Defendant and his wife then went downstairs; Fortier followed, holding a gun. While Fortier and the victim waited, defendant went into the garage to retrieve one more gun, a loaded .22 caliber revolver. He did not point that gun at Fortier or threaten him with it; instead, he placed it with the other guns in a pile and then opened a safe and removed money from it. Defendant placed the money on the pile of firearms. Defendant then went upstairs to get a pillowcase in which to carry the stolen property. After returning downstairs, defendant and his wife lay down on the floor.

What occurred next is disputed. Either defendant or Fortier shot the victim in the head, killing her. Fortier testified that defendant goaded him to "do it" and that, when Fortier could not comply, defendant grabbed a gun, shot the victim himself and then handed Fortier the gun. Defendant testified that "the burglar," referring to Fortier,[1] shot his wife.[2]

Defendant called 9-1-1 and, when the police arrived, they found the victim lying in the kitchen, near the door. Defendant also was lying on the kitchen floor, with his hands and feet bound with duct tape and a phone receiver against

---

[1] In his testimony at trial, defendant maintained that he had never met Fortier and that he did not recognize the "burglar." However, it is clear from the evidence presented at trial that Fortier was the "burglar."

[2] Neither version of the facts is "more favorable to the state," but each version supports at least one count of aggravated murder.

his face. Later that morning, police questioned defendant regarding the incident. After defendant twice said "I killed my wife" to the police, he was arrested.

With respect to the foregoing events, the state charged defendant with 11 crimes, including aggravated murder, murder, conspiracy, solicitation, robbery, kidnapping, and unlawful possession of a shotgun.[3] The three aggravated murder charges were based on allegations that defendant intentionally killed the victim under three different theories of aggravation: (1) that defendant solicited and agreed to pay another person to kill the victim and, pursuant to that solicitation and payment, the victim was killed; (2) that defendant killed the victim in the course of and in furtherance of committing the crime of first-degree robbery; and (3) that defendant killed the victim in the course of and in furtherance of committing the crime of second-degree kidnapping.

The jury found defendant guilty of 10 of the 11 crimes charged, including the three aggravated murder charges. The court dismissed count 11, unlawful possession of a short-barreled shotgun. ORS 166.272. The jury also found defendant guilty on all the charges in the second, consolidated case. After a penalty-phase proceeding, the jury sentenced defendant to death. The trial court entered the convictions and sentences on both cases December 10, 2004.

Defendant has assigned 23 rulings of the trial court as error. We will address certain of those assignments of

_____

[3] Those charges were alleged in the indictment case number 02-1010. There was, moreover, an additional set of charges arising out of facts that occurred after defendant was arrested for the murder of his wife: While in jail after his arrest for the murder of his wife, defendant told other inmates that he had planned to have his wife killed to protect his assets. During that incarceration, defendant sought to enlist the assistance of his cellmate to keep two of his children and a coworker from testifying at trial, either by threatening them to keep them quiet or by murdering them, if necessary. Defendant's plan involved having the cellmate, after his release from jail, break into the Safeway store that employed defendant's son and the coworker and, while there, steal money from the safe. The plan also called for the cellmate to burglarize his daughter's home. In a second case, number 03-1113, the indictment charged defendant with multiple counts of solicitation to commit aggravated murder, solicitation to commit murder, and solicitation to commit various other felonies, all arising out of those later incidents. That second case was consolidated with this first case for trial.

error, which we find to merit discussion, later in this opinion.[4] Other issues must be addressed first, however. After oral argument, we asked the parties for supplemental briefing to address questions about verdict inconsistency and jury unanimity: (1) In finding defendant guilty of aggravated murder by hire, did the jury necessarily determine that Fortier shot the victim? (2) In finding defendant guilty of personally committing aggravated felony murder, did the jury necessarily determine that defendant shot the victim? (3) Were the jury verdicts inconsistent and was the jury unanimous respecting the material facts supporting those verdicts?

In his supplemental brief, defendant asserts that the verdict of guilty on count 1 (murder for hire) necessarily is inconsistent with the verdicts of guilty on counts 2 and 3 (murder in the course of robbery and kidnapping, respectively), and that the inconsistency requires reversal of his convictions. He contends that, to find him guilty on count 1, murder for hire, the jury necessarily had to have found that Fortier actually killed the victim and, to find him guilty on counts 2 and 3, the jury had to have found that he *personally* and intentionally killed the victim. By entering verdicts on all three counts, defendant argues, the jury effectively found that the state had proved neither scenario beyond a reasonable doubt. The state, in its supplemental brief, asserts, first, that jurors could have found, consistently on all three counts, either that defendant or Fortier shot the victim and, second, that, given the level of involvement of both defendant and Fortier in the homicide, the identity of the person who actually pulled the trigger was not a material fact on which the jury had to agree unanimously. As we shall explain, we do not find either of the parties' approaches wholly persuasive.

---

[4] We have considered each of defendant's remaining assignments of error, which include several pertaining to defendant's trial and convictions on the charges in the second case, and every argument in support thereof. Several of those assignments of error were not preserved for review or are otherwise not well taken. Others present questions that do not warrant discussion in this opinion because they have been resolved in other decisions by this court. Discussion of those assignments of error would not benefit the bench, the bar or the public and, therefore, we do not address them in this opinion.

## A. *Inconsistent Verdicts and Jury Unanimity*

Before we address the concerns reflected in the questions that we posed to the parties, it is helpful to set out the applicable statutes. ORS 163.115 provides that a criminal homicide constitutes murder when a person intentionally causes the death of another person, ORS 163.115(1)(a), or when a person participates in one of certain enumerated felonies and, in the course of that felony, that person, or any other person, causes the death of another person, whether intentionally or not, ORS 163.115(1)(b).[5] ORS 163.095 defines aggravated murder as (1) "murder as defined in ORS 163.115" that (2) is "committed under, or accompanied by" one or more listed aggravating circumstances.

ORS 163.095(1) lists the aggravating circumstances that can elevate murder to aggravated murder. As pertinent here, defendant was charged in count 1 with aggravated murder for hire under ORS 163.095(1)(b), which provides that a murder is aggravated murder if:

> "The defendant solicited another to commit the murder and paid or agreed to pay the person money or other thing of value for committing the murder."

Defendant also was charged, in counts 2 and 3, with aggravated felony murder under ORS 163.095(2)(d), which provides that a murder is aggravated murder if:

> "Notwithstanding ORS 163.115(1)(b), the defendant personally and intentionally committed the homicide under the circumstances set forth in ORS 163.115(1)(b)."

Among the felonies that ORS 163.115(1)(b) lists as supporting a felony murder charge are "[k]idnapping in the second degree as defined in ORS 163.225," ORS 163.115(1)(b)(E), and "[r]obbery in the first degree as defined in ORS 164.415," ORS 163.115(1)(b)(G).

In addressing defendant's contention that the jury's guilty verdicts on the three aggravated murder counts in this case were inconsistent, we begin by considering what facts

---

[5] That second circumstance is known as felony murder.

the jury necessarily found in reaching those verdicts. Count 1 of the amended indictment alleged as follows:

"[D]efendant * * * did unlawfully and intentionally solicit and agree to pay * * * Fortier money to unlawfully and intentionally cause the death of [victim] and pursuant to that payment * * * Fortier did unlawfully and intentionally cause the death of [victim]."

The question thus becomes whether, in finding defendant guilty of aggravated murder on count 1, the jury was required to, and in fact did, find that Fortier was the person who pulled the trigger, causing the victim's death.

As noted, the applicable statute, ORS 163.095(1)(b), provides that a defendant is guilty of aggravated murder if "[t]he defendant solicited another to commit the murder and paid or agreed to pay the person money or other thing of value for committing the murder." That statute does not specify whether the person whom the defendant hired and paid must be the person who ultimately performed the physical act that caused the person's death. Indeed, the words could be read to say that the crime is complete when (1) the defendant solicits another to commit a murder, (2) the defendant pays or agrees to pay that person to commit the murder, and (3) the homicide occurs. And, under ORS 163.115, a homicide was "murder" if the victim was killed either intentionally or, whether intentionally or not, during the commission of any one of several enumerated felonies. Under that literal reading of the statute, the jury was not required to find that Fortier was the person who performed the physical act that killed the victim, as long as it found that defendant solicited Fortier to do so, paid or agreed to pay him to do so, and the victim was killed as a consequence of that arrangement. The state argues, in part, that that is the way in which the statute should be read.

Although the statutory question thus posed is interesting, we conclude that we do not need to sustain that reading of the statute, in light of the procedural history of this case. That is so because the jury specifically was instructed, with respect to count 1, that, to find defendant guilty, it had to find that defendant hired "another" to commit the murder, paid that "other" person to commit the murder, and

succeeded in causing the murder "by" doing so.[6] Read contextually, we think that the jury would have understood that instruction to require that, to find defendant guilty, it had to find that Fortier (who, from the evidence, was the "other") had personally killed the victim. We shall assume that the jury so found, *i.e.*, that it specifically found that Fortier killed the victim. And, if the jury so found, defendant would be guilty on count 1.

We turn to count 2 of the amended indictment, which charged defendant with aggravated felony murder, *i.e.*, murder committed intentionally during a robbery.[7] As we did with respect to count 1, we first consider whether, to convict defendant of aggravated felony murder in count 2, the jury *was required* to find that defendant himself caused the victim's death.

Count 2 alleged that:

"[D]efendant * * * did unlawfully and knowingly commit the crime of Robbery in the First Degree and in the course of and in furtherance of the crime that defendant was committing, defendant personally and intentionally caused the death of [victim]."

With respect to that count, the court instructed the jurors, among other things, that the state was required to prove beyond a reasonable doubt that defendant "personally and

---

[6] The jury instructions stated, in part:

"Oregon law provides that a person commits the crime of aggravated murder if that person intentionally cases the death of another human being under, or accompanied by, certain defined circumstances.

"In this case, to establish the crime of aggravated murder, the state must prove beyond a reasonable doubt the following three elements:

"* * * * *

"[Defendant] intentionally caused the death of [victim], another human being, by soliciting another to commit the murder and paying or agreeing to pay the person money or other things of value for committing the murder."

[7] As we discuss in more detail later in this opinion, we reverse defendant's conviction on count 3, aggravated murder committed during the course of the commission of the crime of kidnapping in the second degree, because the evidence is insufficient to prove that defendant committed the underlying crime of kidnapping in the second degree. Accordingly, we confine our discussion in the remainder of this section to count 2.

intentionally caused the death" of the victim. Again assuming (as we do) that the jury followed the court's instructions,[8] we also assume that the jury found that defendant personally killed the victim during the course of a robbery. And, if the jury so found, defendant would be guilty on count 2.

As a result, we can easily dispose of the main problem that the dissent has identified in this case: that the trial court erred in failing to instruct the jurors that they must agree on the identity of the triggerman and that they did not reach unanimous agreement on that material fact.[9] The trial court instructed the jurors that they must decide, unanimously, on count 1, that defendant hired Fortier to kill defendant's wife and that Fortier did so; and instructed them that they must decide, unanimously, on count 2, that the defendant personally and intentionally killed the victim in the course of a robbery.

■■ Even if there were some possibility that the jury instructions did not require juror agreement on the identity of the triggerman, defendant did not preserve an objection either as to the clarity or the completeness of the instructions that the court did give regarding jury unanimity.[10] The dissent acknowledges that failing, but asserts that this court nonetheless should review the issue as one involving "plain error," citing for that proposition *State v. Boots*, 308 Or 371, 780 P2d 725 (1989); *State v. Lotches*, 331 Or 455, 17 P3d 1045 (2000); and *State v. Hale*, 335 Or 612, 75 P3d 448 (2003). We think that reliance is misplaced.

*Boots* is not on point. The jury there was told that it did not need to be unanimous respecting which of two alternative theories of criminal responsibility was the correct one. *Boots*, 308 Or at 374-75. The precise opposite was true here—

---

[8] Each juror was given a copy of the court's instructions to take to the jury room.

[9] Defendant himself never saw this problem, even after having been specifically invited by this court to consider whether the jury unanimously agreed on the facts necessary to convict defendant of aggravated murder.

[10] We do not wish to be understood as approving the court's instructions; we simply note that defendant did not preserve any objection concerning them.

the jury was told that it must agree unanimously as to each of the theories of criminal responsibility submitted to it.

*Lotches* and *Hale* also are not on point. In those cases, although the court did not expressly *permit* jurors to disagree as to the facts that constituted the felonies underlying the charges of aggravated murder, including the identities of the perpetrators and victims of those felonies, neither did the court constrain their discretion to do so. In this case, the dissent cannot contend, as the defendants in *Lotches* and *Hale* did, that the jury could have been confused about the identities of the perpetrators or victims of unidentified underlying crimes about which it received no instruction. Instead, the dissent is concerned that the jury could have disagreed as to defendant's role in the murder itself. We think the jury instructions in each instance fairly told the jurors what facts they must find to identify the perpetrator of the murder and return a guilty verdict. But even if the instructions left the door open to some measure of disagreement, we do not think the likelihood of that disagreement was so high that we should consider the instructions erroneous notwithstanding defendant's failure to object to them. Ambiguity (assuming there is any) respecting the basis for the jury's verdict on each count under consideration here is far too tenuous to justify application of the rule from *Boots*, *Lotches*, and *Hale*, or to say that any error was "plain."

For his part, defendant argues that the verdicts present what he claims to be an "inconsistency" on the two counts: If the jury unanimously found that Fortier personally killed the victim (count 1), defendant argues, how can we accept the proposition that the jury unanimously also found that defendant personally killed that same victim (count 2)? As to that question, however, defendant made no objection respecting either the verdicts or the sentences entered pursuant to them. There was a procedure under which defendant could have asked to have the jurors reconsider their verdicts, ORS 136.480,[11] but defendant did not attempt to use that

---

[11] ORS 136.480 provides:

"When a verdict is found in which it appears to the court that the jury has mistaken the law, the court may explain the reason for that opinion and direct the jury to reconsider its verdict; but if after such reconsideration the jury finds the same verdict, it must be received."

procedure. We therefore decline to correct any "plain error" that may exist.

Our decision in this respect is based on an analogous, long-standing rule of Oregon civil law:

> "We hold that defendants waived their objection to the defect in the jury's verdict by failing to object when the jury was present. Defendants cannot remain silent, permit the trial court to discharge the jury and enter a judgment * * * [on the verdict returned] by the jury, and then, at a later date, seek a new trial because the verdict contains a defect. Because defendants waived their objection to the verdict, they are not permitted to rely later on the same objection in seeking a new trial."

*Building Structures, Inc. v. Young*, 328 Or 100, 113-14, 968 P2d 1287 (1998) (citing earlier cases).

The dissent argues that defendant's aggravated murder convictions must be reversed because of the "logical impossibility" that the jury could have found both that defendant shot the victim and that Fortier shot the victim. The dissent agrees that there was sufficient evidence to support a verdict of guilty of aggravated murder under either theory. Nevertheless, the dissent asserts that the instructions that the trial court gave were such that there was a "real danger" of juror confusion and therefore that the convictions are constitutionally infirm. As we have described above, the verdicts might be inconsistent, but that would have been apparent at the time the verdicts were rendered, and defendant could have raised that issue and obtained clarification from the jury at that time. ORS 136.480. Whether defendant failed to do so because it was obvious that either verdict, standing alone, was sufficient to support a conviction for aggravated murder or for some other reason, defendant did not raise that objection and we see no justification for addressing it as "plain" error. The dissent's arguments are well-articulated and raise some interesting hypothetical questions about what the jurors may have been thinking, but they do not demonstrate legal error or suggest that, considering the evidence, the jury necessarily acted impermissibly in finding defendant guilty of aggravated murder on either count.

## B. *Insufficiency of Evidence of Robbery and Kidnapping*

■■ We next consider defendant's assignments of error relating to the sufficiency of the evidence to establish the felonies of robbery and kidnapping. Defendant contends that the state failed to prove that he had committed either robbery or kidnapping and, therefore, the trial court should have granted his motion for judgment of acquittal on the counts that depended on findings that he committed those offenses. We turn first to the assignments of error relating to the sufficiency of the evidence of the crime of robbery in the first degree. In that regard, defendant assigns error to the trial court's denial of his motions for a judgment of acquittal on counts 2 (aggravated murder based on the underlying felony of robbery in the first degree) and 9 (robbery in the first degree). On review of a challenge to a denial of a motion for acquittal, we view the facts in the light most favorable to the state and consider whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Krummacher*, 269 Or 125, 137-38, 523 P2d 1009, 1015 (1974).

Under ORS 164.415,[12] to prove robbery in the first degree in the context of this case, the state was required to prove: (1) that the defendant committed theft;[13] (2) that

---

[12] ORS 164.415, in relevant part, defines robbery in the first degree as follows:

"(1) A person commits the crime of robbery in the first degree if the person violates ORS 164.395 and the person:

"(a) Is armed with a deadly weapon."

ORS 164.395, in turn, provides, in relevant part:

"(1) A person commits the crime of robbery in the third degree if in the course of committing or attempting to commit theft * * * the person uses or threatens the immediate use of physical force upon another person with the intent of:

"(a) Preventing or overcoming resistance to the taking of the property or to retention thereof immediately after the taking; or

"(b) Compelling the owner of such property or another person to deliver the property or to engage in other conduct which might aid in the commission of the theft * * *."

[13] ORS 164.015, in relevant part, defines theft as follows:

"A person commits theft when, with intent to deprive another of property or to appropriate property to the person or to a third person, the person:

"(1) Takes, appropriates, obtains or withholds such property from an owner therof[.]"

defendant used or threatened immediate use of physical force; and (3) that defendant was armed with a deadly weapon. It is the first two elements of the crime of robbery that are at issue here.

Defendant makes three arguments: (1) all of the evidence adduced at trial showed that defendant voluntarily surrendered his own property, and "one cannot commit theft of his own property;" (2) even if the stolen money had been earned by the victim, there was no evidence to show that it was not "joint property;" and, (3) even if one of the stolen firearms belonged solely to the victim, there was no evidence that that weapon was taken by force or threat of force.

As the state explains, its theory was not that defendant robbed himself, but that Fortier robbed Hong Ha Zweigart, the victim, and defendant aided and abetted Fortier in that robbery, thereby making himself a principal in that crime. The state advanced its theory of accomplice liability at trial and adduced evidence that, as an accomplice, defendant offered and gathered the goods and provided assistance and direction to Fortier in a variety of ways. Indeed, there is ample evidence in the record that defendant had orchestrated the entire plan. We hold that a rational juror could have found that defendant assisted Fortier in robbing a third person, the victim.

In addition, there was abundant evidence that the victim was an owner of at least some of the stolen property. An "[o]wner of property taken, obtained or withheld" is "any person who has a right to possession thereof superior to that of the taker, obtainer or withholder." ORS 164.005(4). Fortier was the "taker, obtainer or withholder" of the money and firearms. The victim's right to possess the money was superior to that of Fortier, even if it was not also superior to that of defendant. That is, whether defendant was also an "owner" is of no consequence under the statute: The victim was in joint possession of the property, and it was taken from her by force. Based on the foregoing, we hold that a rational jury could have found that the victim was an "owner" of the money.

We also have no difficulty concluding that a rational jury could have found that Fortier acted with force or threat of force. Fortier entered the victim's house at night, entered

her bedroom as she slept, and was carrying a gun throughout the entire episode. In addition, Fortier testified that he followed the defendant and the victim down the stairs carrying the gun, and that the victim asked him to "please not hurt [her] husband." Those facts are sufficient to support the jury's verdict. Accordingly, we affirm defendant's conviction for robbery in the first degree on count 9. For the same reasons, we conclude that defendant's challenge to the sufficiency of the evidence is not a basis for reversing defendant's conviction for aggravated felony murder based on the underlying crime of first-degree robbery in count 2.

■ We next address defendant's assignments of error relating to count 3, the aggravated murder charge based on the underlying felony of second-degree kidnapping, and count 10, charging defendant with second-degree kidnapping. Defendant contends that the state did not present sufficient evidence from which a rational juror could have found that he committed kidnapping in the second degree and, therefore, that the court erred in denying his motion for judgments of acquittal on those counts based on that crime. *See Krummacher*, 269 Or at 137-38 (stating rational juror standard). Specifically, defendant argues that the victim's movement in this case "was merely incidental" to the robbery or murder crimes and that the state failed to establish that defendant intended to interfere substantially with victim's personal liberty as required by ORS 163.225(1).[14]

In response, the state argues that both the distance that Fortier moved the victim and the amount of time that he stayed with her were substantial, and that Fortier's movement of the victim was not incidental to the crimes of robbery and murder because those crimes could have been accomplished sooner and in one place:

---

[14] ORS 163.225(1) provides:

"A person commits the crime of kidnapping in the second degree if, with intent to interfere substantially with another's personal liberty, and without consent or legal authority, the person:

"(a) Takes the person from one place to another; or

"(b) Secretly confines the person in a place where the person is not likely to be found."

"There is *no* evidence in the record that the victim's presence was necessary to get the money out of the safe[;] * * * [d]efendant could have accomplished his goal of killing the victim and paying off Fortier without ever moving her from the bedroom[; and] * * * defendant (or Fortier) could have shot [victim] while she lay in bed and then gathered up the property that Fortier took with him."[15]

(Emphasis in original.)

This court's recent decision in *State v. Wolleat*, 338 Or 469, 473, 111 P3d 1131 (2005), presented a similar issue. In that case, the defendant was charged with kidnapping based on the fact that he moved the victim from room to room in their apartment during the course of an assault. In evaluating the matter, the court observed that the kidnapping statute requires the state to prove two elements: the mental state, or intent, element ("inten[ding] to interfere substantially with [the victim]'s personal liberty"), and the physical act, or asportation, element (taking the victim "from one place to another"). The defendant in that case had not contended that the movement of the victim was insufficient to prove asportation and the court did not address that issue. Instead, the court focused on the mental state element of the crime. The court noted that the legislature distinguished the crime of kidnapping from other crimes that may also involve moving or restraining a victim by focusing, in describing the intent element of the crime of kidnapping, on the victim's interest in personal liberty. In describing that interest, the court stated:

"[t]he liberty interest that the [kidnapping] statute protects from interference is the interest in freedom of movement[;] * * * a defendant must intend either to move the victim a 'substantial distance' or to confine the victim for a 'substantial period of time.' "

---

[15] The state asserts that defendant failed to preserve at trial the issue of the sufficiency of the state's proof of the intent element of kidnapping, implying that this court should not consider it. It is true that, in his motion for judgment of acquittal, defendant did not specifically argue that the state had not established the intent element of the crime. He did, however, point specifically to the lack of evidence of forced movement or constraint. We conclude that defendant's motion for acquittal adequately raised the issue that we now resolve.

*Id.* at 475. The court stated that, although the intent and asportation elements are distinct, they are closely related. That is, a reasonable juror may infer intent to interfere substantially with a victim's freedom of movement from evidence that the defendant moved the victim a substantial distance. However, the court emphasized, minimal movement that amounts to incidental conduct that might accompany some other crime is, standing alone, insufficient proof of intent to support a conviction. *Id.* at 478.

In this case, defendant also does not argue that his or Fortier's movement of the victim is insufficient to prove asportation. Rather, he contends, the movement of the victim merely was incidental to another crime that he was committing, the robbery, and was insufficient to establish his intent to interfere with the victim's personal liberty.

At the outset, we observe that the state presented no evidence other than the movement of the victim from which the jury could have inferred that Fortier or defendant intended to kidnap her. Indeed, no witness mentioned or even implied that either Fortier or the defendant had any separate plans to move the victim from one place to another, hold her somewhere, or otherwise interfere with her liberty. The only question, then, is whether a rational juror could have found that Fortier's conduct in forcing the victim at gunpoint down the stairs so that the defendant could retrieve guns and open the safe was more than incidental to the other crimes that he and defendant committed and, therefore, could have based a finding of intent upon it.

In *Wolleat*, this court cited as an example of "incidental" movement the " ' taking of a holdup victim from the front office to a back room against his will so that he might open a safe.' " 338 Or at 477 (quoting legislative history of kidnapping statute). Although, here, Fortier did not force the victim to open the safe, the evidence at trial demonstrated, at most, that Fortier moved the victim along with defendant while the two men engaged in robbery of the victim's property. Either Fortier or defendant then directed the victim to lie down, but they did not tie or otherwise restrain her, and someone shot her just moments later. Those movements of the victim were incidental to the robbery and shooting. We hold that a

rational juror could not conclude from the evidence presented that either Fortier or defendant intended to interfere substantially with the victim's liberty. Accordingly, we reverse defendant's conviction for the crime of kidnapping charged in count 10 and defendant's conviction for aggravated felony murder based on the underlying crime of kidnapping charged in count 3.

## C. *Propriety of Consecutive Sentences*

■ One final matter bears discussion. At sentencing in the aggravated murder case, the trial court, in addition to imposing the death sentence for each of defendant's convictions for aggravated murder, made various sentencing rulings including, among other things, choosing to merge many of the convictions for sentencing. However, with respect to defendant's conviction for first-degree robbery, count 9, the court held that the conviction does not merge with any other conviction and found that the offense demonstrated a willingness by defendant to commit more than one criminal offense justifying a consecutive sentence under ORS 137.123. The court stated that it made that finding beyond a reasonable doubt and acknowledged that the jury had not made that finding. On that count, the court sentenced defendant to a 90-month prison term, to be served consecutively to the death sentence. In addition, in the second case, number 03-1113, the court ordered the sentence on count 10 (defendant's solicitation to burglarize the St. Helens Safeway and to commit theft there) be served consecutive to the sentences for defendant's convictions on counts 1, 2, and 3 for solicitation to commit aggravated murder. In so doing, the court found that the solicitation to commit burglary was a "separate, distinct offense; separate, distinct victim."

Defendant argues in three assignments of error that the court erred in ordering the sentence for the robbery conviction in the first case to be served consecutively to the death sentence, and in ordering the sentence for the solicitation-to-commit-burglary conviction in the second case to be served consecutively to other sentences imposed in the second case. Defendant contends that the trial court improperly based its decision to impose those consecutive sentences on its own judicial fact-finding rather than, as constitutionally required,

on facts that defendant had admitted or that had been proved to the jury beyond a reasonable doubt.

In *State v. Ice*, 343 Or 248, 170 P3d 1049 (2007), *cert granted*, ____ US ____ , 128 S Ct 1657, 170 L Ed 2d 353 (2008), which this court decided after the parties filed the briefs in this court, this court held that, under the Sixth Amendment to the United States Constitution and the United States Supreme Court's decisions in *Apprendi v. New Jersey*, 530 US 466, 120 S Ct 2348, 147 L Ed 2d 435 (2000) and *Blakely v. Washington*, 542 US 296, 124 S Ct 2531, 159 L Ed 2d 403 (2004), a trial court may base a decision to impose consecutive sentences only on facts necessarily found beyond a reasonable doubt by a jury or admitted by the defendant and may not base that decision on its own judicial fact-finding. *Ice*, 343 Or at 265-67. Applying that holding to the facts in *Ice*, this court held that the trial court in that case erred in imposing consecutive sentences for the defendant's convictions for burglary and sexual assault based on its own finding that the offense for which the consecutive sentence was contemplated was not merely an incidental violation of a separate statutory provision but, rather, demonstrated the defendant's willingness to commit more than one criminal offense. *Id.* at 267.

With respect to the robbery sentence in this case, the trial court based its decision to impose a consecutive sentence for defendant's robbery conviction on its own judicial finding that that conviction was not merely an incidental violation of a separate statutory provision but, rather, demon-strated the defendant's willingness to commit more than one criminal offense. That fact had not been proved to the jury beyond a reasonable doubt.[16] As in *Ice*, therefore, that ruling violated defendant's Sixth Amendment rights and was error. We vacate defendant's sentence on count 9, and require that the trial court reconsider that sentence on remand.

---

[16] The issue was preserved. Defendant timely argued to the sentencing court that that court could not impose consecutive sentences for convictions arising out of the same continuous, uninterrupted course of conduct based on any fact not found by a jury beyond a reasonable doubt.

 The trial court's decision to impose a consecutive sentence on one of defendant's convictions in case number 03-1113 is a different matter, however. As noted above, all of defendant's convictions in that second case arose out of defendant's attempt to solicit his cellmate to intimidate or murder his two children and one of his coworkers so that they would not testify against him in his murder trial. Under defendant's plan, the cellmate was to break into the St. Helens Safeway store, where two of the intended victims worked, steal money out of the store safe, and prevent the two intended victims from testifying with respect to the earlier murder case—by killing them, if necessary. In counts 1, 2, and 3 in that case, defendant was convicted of that solicitation to commit aggravated murder, one count for each of the intended victims. On those convictions, the court imposed consecutive 100-month sentences. On count 10 in that case, defendant was convicted of solicitation to commit burglary for soliciting the cellmate to unlawfully enter and remain in the St. Helens Safeway store and commit theft while using a dangerous weapon (a firearm). The court imposed a sentence of 20 months in prison on that conviction, to run consecutive to the sentences that the court already had imposed on counts 1, 2, and 3. In ordering that sentence to run consecutive to the other sentences, the court stated, "I am doing so because there is a separate, distinct offense; separate, distinct victim as required by ORS 137.123(5), and I so find beyond a reasonable doubt."

Although the trial court purported to base the consecutive sentence on count 10 on its own judicial finding of "separate, distinct offense; separate, distinct victim," the fact that the St. Helens Safeway store was a separate victim from any victim named in counts 1, 2, and 3, and that solicitation to commit burglary of or theft from that store was a separate offense from the offense of solicitation to commit aggravated murder of each of the three individuals named as the intended victims in counts 1, 2, and 3 is inherent in the indictment and in the jury's verdicts on those counts. That is, the jury necessarily found beyond a reasonable doubt that count 10 involved a different victim than the victims involved in counts 1, 2, and 3. Accordingly, the trial court did not err in

imposing a consecutive sentence on count 10 in case number 03-1113.

In case number 02-1010, the judgments of conviction for aggravated murder on count 3 and kidnapping in the second degree on count 10 are reversed. The judgments of conviction for aggravated murder on counts 1 and 2 and the sentences of death are affirmed. The sentence on count 9 on defendant's conviction for robbery in the first degree is vacated. All other convictions and sentences are affirmed. Case number 02-1010 is remanded to the circuit court for further proceedings. Case number 03-1113 is affirmed.

### WALTERS, J., dissenting.

The majority sustains defendant's convictions for aggravated murder by concluding that the trial court instructed the jury that it unanimously must decide who shot Hong Ha Zweigart and that the jury did so. Specifically, the majority opines that the trial court instructed the jury that, on count 1, it must find that Fortier shot the victim, and that, on count 2, it must find that defendant did so. If the majority is correct in its presumption that the jury understood and followed those instructions, then the jury found that both Fortier and defendant pulled the trigger, when the inescapable fact that stares out of the record is that only one man did so. To me, the logical impossibility of the jury's verdicts spotlights the errors that I discern in the instructions. The instructions permitted some jurors to decide that Fortier was the shooter and others to decide that defendant played that role. Because the instructions did not clearly inform the jury that it must reach unanimous agreement on the identity of the shooter, the court cannot determine that the jury agreed on that essential fact. And because unanimous juror agreement on that essential fact is necessary for both convictions, the court cannot sustain them. Respectfully, I must dissent.[1]

Article I, section 11, of the Oregon Constitution requires that a jury's verdict of guilty on every charge of

---

[1] I have limited my written dissent to the issues and assignments of error that the majority has chosen to discuss, but do not intend that limitation to express an opinion on whether I would affirm or reverse on any other grounds.

first-degree murder must be unanimous.[2] This court has held that, in returning a verdict in a criminal case, a jury must agree, not only that a defendant is guilty of a crime, but also on all the facts material to prove the crime. *State v. Boots*, 308 Or 371, 780 P2d 725 (1989). The state may allege alternative sets of facts, any one which may be sufficient to establish guilt, and may offer proof of alternative sets of facts, but the jury, in returning its verdict, must select one of those alternative scenarios and agree on it. *Id.* at 377. It is not permissible for half of the jurors to select one scenario, half to select another, and all to agree only that the defendant is "guilty." *Id.*

In the past, the court has reviewed guilty verdicts in aggravated murder cases to ensure that juries were unanimous in finding all material facts, and has reversed convictions when it could not be certain that that requirement was met. And, in the past, the court has reversed convictions in those cases even if the defendant failed to preserve the error. *State v. Hale*, 335 Or 612, 75 P3d 448 (2003); *State v. Lotches*, 331 Or 455, 17 P3d 1045 (2000).

In *Hale*, the state charged the defendant with numerous counts of aggravated murder. Some counts of the indictment alleged that the defendant had committed aggravated felony murder, that is, intentional homicide committed in the course of the commission of another felony, in that case, the felony of sexual abuse. The indictment did not allege the identity of the perpetrator of the underlying sexual abuse

---

[2] Article I, section 11, of the Oregon Constitution provides:

"In all criminal prosecutions, the accused shall have the right to public trial by an impartial jury in the county in which the offense shall have been committed; to be heard by himself and counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof; to meet the witnesses face to face, and to have compulsory process for obtaining witnesses in his favor; provided, however, that any accused person, in other than capital cases, and with the consent of the trial judge, may elect to waive trial by jury and consent to be tried by the judge of the court alone, such election to be in writing; provided, however, that in the circuit court ten members of the jury may render a verdict of guilty or not guilty, save and except a verdict of guilty of first degree murder, which shall be found only by a *unanimous* verdict, and not otherwise; provided further, that the existing laws and constitutional provisions relative to criminal prosecutions shall be continued and remain in effect as to all prosecutions for crimes committed before the taking effect of this amendment."

(Emphasis added.)

or the victim of that abuse. At trial, the state presented evidence that either the defendant or his friend had sexually abused multiple victims under multiple circumstances. The trial court did not instruct the jurors specifically that they had to agree unanimously on the identity of either the perpetrator or the victim of the sexual abuse. The defendant did not request an instruction to that effect, nor did he object to the instructions that the trial court gave. The jury returned guilty verdicts, finding, in accordance with the court's instructions, that the defendant had intentionally killed the victim in the course of the commission of the felony of sexual abuse. On review, this court reversed those convictions. The court applied its holding in *Lotches*, in which the court had held that the jury must reach unanimity on all material facts necessary to establish " 'just what defendant did' to bring himself within the purview of the particular subsection of the aggravated murder statute under which he was charged." 331 Or at 468-69 (quoting *United States v. Gipson*, 553 F2d 453, 457 (5th Cir 1977)). Even though the identities of the perpetrators and the victims of the underlying abuse were not "elements" of the crimes in the sense that the particular identities of those people would not make the difference between guilt and innocence, the court explained that their identities were material, and held that because the instructions did not specifically inform the jury that it must unanimously agree on those facts, they "carried an impermissible danger of jury confusion." *Hale*, 335 Or at 627.

In the case before us, defendant's role in the murder—as either the person who hired the shooter or as the actual shooter—is a factual issue that the jury must decide in determining "just what defendant did" to render him guilty of aggravated murder. A jury determination of that fact was necessary for the entry of lawful verdicts on both counts. As the majority explains it, the court's instructions informed the jurors that they were required to find on count 1 that the person that defendant hired, Fortier, was the shooter, and on count 2, that defendant shot the victim "personally." 344 Or at 629. The majority then reasons that, because we must assume that the jurors followed those instructions, we must also conclude that the jurors found the identity of the shooter and did so unanimously. As a result, claims the majority, the

instructions were not defective in the respect identified in *Hale*.

That reasoning is flawed. As the state acknowledges, the instructions were not as clear as the majority makes them out to be. On count 1, the trial court instructed the jurors that they must find that defendant "caused" the murder of the victim "by" soliciting and paying Fortier. Jurors—one, some, or all—could have understood that they could render a guilty verdict on count 1 if they found that defendant "caused" the murder "by" soliciting and paying Fortier, and then firing the gun himself. *See* ORS 163.095(1)(b) (subsection of aggravated murder statute requiring proof that the defendant committed murder and that the murder was "committed under, or accompanied by" circumstances of solicitation and payment). Any number of jurors also could have found defendant guilty on count 1 based on an additional "aiding and abetting" instruction that the court gave. That instruction permitted the jury to hold defendant criminally liable for aggravated murder if he aided and abetted someone else who committed that crime.[3] Some jurors reasonably could have determined that defendant was guilty on count 1 because he solicited and paid Fortier to kill his wife and then aided and abetted Fortier by himself doing the shooting.

Similarly, on count 2, as the state again acknowledges, some jurors could have understood the word "personally" to require only that they find that defendant had "an actual role in causing the death." *See State v. Nefstad*, 309 Or 523, 541, 789 P2d 1326 (1990) (jury was properly instructed that " '[p]ersonally in the context of aggravated murder means that to be guilty of that crime the [d]efendant must have had an actual role in causing the death and not merely a role in the felony during which the death occurred' "). Without an instruction that precluded them from doing so, jurors

---

[3] The aiding and abetting instruction, which applied to all of the counts in this case, stated:

"A person aids and abets another person in the commission of a crime if the person

"(1) With the intent to promote or make easier the commission of the crime,

"(2) Encourages, procures, advises, or assists, by act or advice, the planning or commission of the crime."

could have found that defendant played the necessary role because he supplied Fortier with the gun and goaded Fortier to "do it." Jurors with that understanding of the instructions did not necessarily decide that defendant shot the victim, despite voting "guilty" on count 2. And again, relying upon the aiding and abetting instruction the trial court gave, jurors could have convicted defendant on count 2 by finding that he did not shoot the victim but "aided and abetted" the person who did, *i.e.* Fortier.

To summarize, some jurors could have understood that they had to find that Fortier was the shooter to reach a guilty verdict on count 1 and that defendant was the shooter to reach a guilty verdict on count 2, but others could have had a different understanding. Because the instructions permitted some of the jurors to select one scenario and the rest to select another, the instructions presented the exact constitutional defect that required reversal in *Hale*.

Although the majority admits the danger of confusion that the instructions presented, it shields its eyes by relying on defendant's failure to preserve that error. The majority states, "Even if there were some possibility that the jury instructions did not require juror agreement on the identity of the triggerman, defendant did not preserve an objection either as to the clarity or the completeness of the instructions that the court did give regarding jury unanimity." 344 Or at 629. The majority acknowledges that the instructions may have "left the door open to some measure of disagreement," but declares that the likelihood of juror disagreement was not so high "that we should consider the instructions erroneous notwithstanding defendant's failure to object to them," and that any ambiguity was "far too tenuous" to constitute "plain" error. 344 Or at 630. The majority attempts to distinguish its exercise of plain error review in *Hale* by explaining that the danger presented by the jury instructions in that case was that the jury could be confused about the defendant's role in the underlying felony, while in this case the danger was that the jury could be confused about defendant's role in the murder itself. 344 Or at 630.

For me, close enough is not good enough in a capital case. The majority's reasoning disregards, rather than distinguishes, *Hale*, and the circumstances of this case expose, rather than allay, a basis for judicial concern. *See State v. Brown*, 310 Or 347, 355-56, 800 P2d 259 (1990) (instruction may have led jury to have convicted defendant without finding material fact and "prejudice to defendant is profound, because the missing element makes the difference between life and death"). If the jurors were confused here about whether they had to agree upon the identity of the perpetrator of the murder, as opposed to the identity of the perpetrator of an underlying felony, as in *Hale*, they were confused about an even more important fact than the factual issue in *Hale*, and the justification for engaging in plain error review is even stronger than in *Hale*. Whether the trial court made a faulty attempt to instruct the jury as to the material fact at issue, as it did in this case, or failed to instruct at all, as it did in *Hale*, should make no difference. Both errors carry the same risk: juror confusion. Because of the magnitude of the resulting prejudice to the accused, both errors call for "plain error" review.

Most importantly, and uniquely, in this case, we need not engage in speculation to discern the degree of risk of juror confusion. We know that there was a real danger and we know that it was realized. The majority does not explain how a rational jury could have arrived, unanimously, at mutually exclusive verdicts, because a rational explanation is impossible. If the instructions on count 1 clearly had required that the jury unanimously find that Fortier shot the victim, and if the instructions on count 2 clearly had required that the jury unanimously find that defendant shot the victim, then the jury would have understood that it could not return verdicts of guilty on both counts. The logical impossibility of the jury's verdicts demonstrates that the jurors either failed to understand that they were required to agree unanimously on the identity of the shooter or failed to follow the instructions that the court gave. Neither conclusion should lead to an affirmance of the convictions.

In upholding the jury's inconsistent verdicts, the majority points to an Oregon statute that permitted the trial

court to ask the jury to reconsider a mistaken verdict, and notes that defendant failed to invoke that procedure. 344 Or at 630-31 (citing ORS 136.480[4]). However, that statute is an authorization to the court; it does not require action by a party.

The majority's announcement that it will not correct "plain error" because defendant failed to object undermines the entire "plain error" doctrine. The "plain error" exception to the rule requiring preservation exists for the purpose of addressing circumstances in which a party has failed to take the required action below to preserve an issue for appeal. An appellate court may invoke that doctrine when unpreserved error (1) is an error of law; (2) is apparent, which means that "the legal point is obvious, not reasonably in dispute[ ]"; and (3) appears on the face of the record, meaning that the court "need not go outside the record or choose between competing inferences to find it, and the facts that comprise the error are irrefutable." *Brown*, 310 Or at 355.

The first and third prongs of the "plain error" analysis do not present any difficulty in this case. As to the first, "the issue of what must be included in jury instructions is a question of law[,]" *Hale*, 335 Or at 630, and "[w]hether verdicts are consistent is a question of law[.]" *State v. Thompson*, 328 Or 248, 268, 971 P2d 879 (1999). As to the third, the defects in the instructions and verdicts are obvious from a review of the applicable statutes, the jury instructions, and the verdicts themselves.

The errors in the instructions and verdicts also meet the second prong of the "plain error" test. The parties and the trial court knew that the jury must agree on all material facts and they clearly anticipated that the jury would select between alternative scenarios. The parties and the court discussed the alternative facts that the state pleaded and the

---

[4] ORS 136.480 provides:

"When a verdict is found in which it appears to the court that the jury has mistaken the law, the court may explain the reason for that opinion and direct the jury to reconsider its verdict; but if after such reconsideration the jury finds the same verdict, it must be received."

inconsistency that they created during argument on defendant's motions for acquittal. The prosecutor argued as follows:

> "We cannot bootstrap them into counts that exist except for lesser includeds, and you have to file sometimes what appear to be inconsistent theories because the Supreme Court says you go to do them all at once, can't string them out.
>
> "You can't have your he shot her trial and then they shot her trial. You can't do it. So I know it's hard. Sometimes juries scratch their heads and say well, what the heck are you guys doing, can't you make up your mind, but we'll explain that in argument and *I'm sure they'll understand that.*"

(Emphasis added.) Although the majority asserts that the state and the court were "sure [the jurors would] understand," the jurors plainly did not. When they returned guilty verdicts on both counts, the legal point—the jury's confusion regarding the necessity that they agree upon and find the identity of the shooter—was obvious. In my view, the requirements of the "plain error" exception were met.

It is true that defendant did not object to the instructions or the verdicts. But we cannot turn away from the truth that, if the jury instructions in this case were sufficiently clear, this court readily could determine from the verdicts the identity of the man who shot Hong Ha Zweigart. The court also would know which, if either, of the mutually exclusive verdicts to sustain. Instead there is a very real likelihood that, although the jurors thought that defendant was "guilty," they did not agree unanimously on a fact essential to defendant's conviction. Our prior cases insist that there is more to justice than two irreconcilable guilty verdicts. Justice requires that this court be able to determine that a jury unanimously decided just what defendant did that yielded a sentence of death. Because we cannot, I must dissent.

Durham, J., joins in this dissenting opinion.